75 So.2d 471

James S. PATTERSON, as Administrator of the Estate of Marcus Lichtbach, Deceased,

v.

The FIRST NATIONAL BANK OF MOBILE, as Executor, etc., et al.

Lucille Z. HERMAN

v.

The FIRST NATIONAL BANK OF MOBILE, as Executor, etc., et al.

Leon SAFDI, as Executor of the Estate of Betty Herman, Deceased,

v.

The FIRST NATIONAL BANK OF MOBILE, as Executor, etc., et al.

I Div. 549, 552, 555.

Supreme Court of Alabama.

Oct. 28, 1954.

Arthur J. Kearley, Mobile, for appellant
Patterson, Adm'r.

Kilborn & Johnson and Wm. V. McDermott, Mobile, for appellants Safdi, Adm'r and Herman.

604

Caffey, Gallelee & Caffey and Leo M. Brown, Mobile, for appellees.

PER CURIAM.

There are three appeals submitted in one record. Each of them is from a decree sustaining a demurrer to the original bill or a cross bill. There are two cross bills. The complainant in the original bill and cross complainant in each of the cross bills took an appeal, and each of the three appellants assign errors separately.

The complainant in the original bill is the administrator de bonis non cum testamento annexo of the estate of Marcus Lichtbach who died in 1935, leaving a will which was duly and properly probated. Section 175, Title 61, Code. He named as executors his wife, Lena, and his brother, Isaac, who qualified as such. He left no children.

Marcus and Isaac were partners in a business enterprise and owned real and personal property in common. An item of the will provided that his partnership interest in the firm of Lichtbach Brothers be continued in the name of his estate in the same manner as though he were still living until the time of the division of his estate "as has been hereinbefore provided", which was the death of his wife, Lena. After his death his executors continued with the partnership. They made an annual settlement the same year in which Marcus died, but have made no further settlement of any sort. Lena and Isaac continued the business as before until Isaac died in 1943, and his widow, Mary, became his executrix. Thereafter. Lena and Mary continued the business as before until Lena died in 1945, and the First National Bank of Mobile became her executor. Thereafter the bank as such executor and Mary have continued the business, and have not made settlement. The bank as executor of Lena filed accounts for a final

settlement of Lena's estate. But Lena's executor and Isaac's executrix Mary have not undertaken to settle their executorship of the estate of Marcus. One purpose of the original bill by Patterson as administrator de bonis non was to compel the executors of Lena and of Isaac to make such a settlement.

The bill alleges that the bank as executor of Lena's estate has received large amounts of money and effects which belong to the estate of Marcus and which should be paid to him as such executor. It shows that no debts were presented within the time required by law. It does not allege that he as administrator de bonis non needs to receive into his possession any of the assets of Marcus except for distribution to the legatees. It does not show that there exists any "other act of administration to be done than making distribution or payment of legacies, and the estate is solvent," as provided in section 322, Title 61, Code. Therefore, "the court [in which the administration is pending] must at once proceed to decree distribution or payment of legacies directly to those entitled". The administration of the estate of Marcus and that of Lena have been removed into that court of equity. This of course may be done on the petition of the executor, administrator or certain others without any special equity. Section 139, Title 13, Code.

We judge from the arguments that the court sustained the demurrer to the bill on the ground that the will bequeathed to Lena the full and complete ownership of all the property and effects of Marcus, and therefore she is not accountable to the administrator de bonis non of the estate of Marcus for any of the property since the estate does not need it for any administrative purpose. (Twelve years expired from the time Marcus died to the filing of the original bill.) It is not contended by appellant that if that is a correct construction of the will, he has any standing in equity on account of this bill, and the demurrer was properly sustained.

The cross bills, one by Betty Herman and another by Lucille Herman, are dependent also upon a construction of the will. They claim to have succeeded by inheritance to an interest in the estate of Pauline Lichtbach Herman who is named in the will of Marcus as a legatee. They therefore are due to have distributed to them the share of the personal estate of Marcus to which they thus became the owners and which estate went into the hands of Lena and Isaac as the executors of Marcus and is now in the hands of the bank as Lena's executor. and of Mary as the executrix of Isaac. Their interest results from a succession of events by which they each claim to have succeeded to certain interests in the estate of Pauline who was a legatee of Marcus and who had no children. Pauline was one of two children of Isaac: Cecile being the other child. Pauline died in 1936 soon after the death of Marcus. She left surviving her husband Robert Herman, her father Isaac and her mother Mary and sister Cecile, but no children. Cecile died in 1944 and left her husband Sidney Simon, and her mother Mary, but no children.

The first question is did Pauline receive any interest in the estate of Marcus by virtue of his will? The will must be construed. It is as follows:

"First. I direct that my just debts be paid by my executors hereinafter named, as soon after my death as may be by them found practicable.

"Second. I give and bequeath to my two nieces, Pauline and Cecile, two thousand dollars each, payable as soon after my death as my executors find practicable.

"Third. I give, devise and bequeath to my beloved wife, Lena, all the property of which I shall die seized or possessed, or to which I may be entitled at the time of my decease, whether real, personal or mixed, except the four thousand dollars bequeathed to my two nieces, under item Second of this will.

"I direct that my estate shall be kept together until the death of my said wife, Lena, the income thereof to be used for her support, and upon her

death, my estate shall be equally divided between the two daughters of my brother, Isaac Lichtbach.

"I request that my partnership interest in the firm of Lichtbach Brothers be continued in the name of my estate, in full force and effect, and in the same manner as though I were still living, until the time of such division of my estate as has been hereinbefore provided.

"Fourth. I hereby nominate and appoint my said wife, Lena, and my brother, Isaac Lichtbach, as executors of this my last will and testament, and declare that they shall not be required to give any bond as such executors nor shall they be required to make any inventory of the property coming into their hands as such executors, nor make any report to any court of their proceedings hereunder.

"Fifth. Should it become necessary or expedient for the accomplishment of the purpose of this, my last will and testament, to convert into cash, my estate, or any part thereof, I hereby grant unto my said executors full power and authority to make such public or private sale of all or any part thereof as they may deem advisable."

■ But regardless of its construction as to the legacy to Pauline, the original bill does not show a right of the administrator de bonis non of Marcus to any relief. If the will meant to bequeath it all to Lena, no right is shown by the administrator to have Lena's estate account to him. If the will means to bequeath to Pauline and her sister all of his estate in remainder the present administrator of the estate of testator does not show that for purposes of administration he is entitled to have any of the estate turned over to him by reason of the statute. Section 322, Title 61, Code. The demurrer to the original bill was properly sustained. But cross complainant Lucille Herman would in that event succeed to a share of Pauline's personal estate. Therefore, if Pauline took a vested remainder under the will of Marcus, Lucille would have some standing in equity as we shall show. A construction of the will is necessary to determine whether Lucille has such interest as will support her cross bill.

■ The construction of a will is always started with the proposition that the province of the court is to ascertain the intent of the testator from the language of the will in connection with attending facts and circumstances which may shed light upon any apparent uncertainty arising from its terms or existing by reason of such facts and circumstances. Sharp v. Hall, 86 Ala. 110, 5 So. 497; Achelis v. Musgrove, 212 Ala. 47, 101 So. 670; City Bank & Trust Co. v. McCaa, 213 Ala. 579, 105 So. 669; Orr v. Helms, 217 Ala. 603, 117 So. 61; Spencer v. Title Guarantee Loan & Trust Co., 222 Ala. 485, 132 So. 730; Hammond v. Bibb, 234 Ala. 192, 174 So. 634; Money v. Money, 235 Ala. 15, 176 So. 817; Baker v. Hendricks, 240 Ala. 630, 200 So. 615; Wiggins v. Wiggins, 241 Ala. 333, 2 So.2d 402; George v. Widemire, 242 Ala. 579, 7 So.2d 269; Kimbrough v. Dickinson, 247 Ala. 324, 24 So.2d 424; McGehee v. Smith, 248 Ala. 174, 26 So.2d 861; Smith v. Nelson, 249 Ala. 51, 29 So.2d 335; Springer v. Vickers, 259 Ala. 465, 66 So. 2d 740.

■ Here we are dealing with a will and not a deed, where the rules of construction are not identical. A later clause in either must be construed in harmony with an earlier clause, if such construction can be fairly given. Where there is an irreconcilable difference between two clauses or provisions of a will the last clause generally prevails as the latest expression of the testator's intention. 69 Corpus Juris 112; Orr v. Helms, supra; Gurley v. Bushnell, 200 Ala. 408, 76 So. 324; Gunter v. Townsend, 202 Ala. 160, 79 So. 644; Fowlkes v. Clay, 205 Ala. 523, 88 So. 651. But the contrary is true in respect to interpreting a deed.

In the case of Graves v. Wheeler, 180 Ala. 412, 61 So. 341, 343, the *deed* by a husband in the granting clause conveyed to his wife certain described property. That was followed by a clause as follows:

" 'It is also expressly **understood** that at the death of my said wife, all the afore-mentioned property shall be equally divided between my lawful children.' " He also reserved the right to manage and control it as long as he may live. The Court refers to the principle that in construing it the purpose is to carry out the intention of the grantor gathered from the language used, and when it can be so ascertained arbitrary rules are not to be sought. And further that "when the granting clause does not expressly designate the estate conveyed, and there is nothing in the other parts of the deed to indicate the estate intended to be conveyed, it would no doubt be a fee-simple estate, under the terms of section 3396 of the Code of 1907 [section 14, Title 47, Code of 1940]; but, if other clauses indicate the nature and character of the estate conveyed, there would be no room for the operation of the statute." The Court held that the wife took a life estate with a vested remainder in all his lawful children. The same principle was applied in the cases of Abney v. Moore, 106 Ala. 131, 18 So. 60; Phillips v. Phillips, 186 Ala. 545, 65 So. 49; Jenkins v. Woodward Iron Co., 194 Ala. 371, 69 So. 646.

■ It is well settled that where a will does not expressly define the estate of the first taker, a divise over after his death is definitive of his estate and will be given effect in keeping with the intention of the testator, if not unlawful. Higdon v. Higdon, 243 Ala. 571(6), 11 So.2d 140.

In Hatcher v. Rice, 213 Ala. 676, 105 So. 881, 883, the first paragraph of the will of the deceased wife gave to her husband certain named property without limitation or qualification. The third paragraph provided that at the death of her husband all such property should go to her named nieces. The opinion of the Court referred to that status and observed that the first paragraph does not in specific terms delimit the extent of the estate devised to him, but there is no doubt of its effect if not elsewhere qualified and there is no doubt or uncertainty, no vagueness or generality about the language of the third paragraph. Its language is clear and decisive to the effect that at the death of the husband the property should go to the appellants. The opinion concludes that "There is no reason why such provision should not be made fully effective according to the expressed intent of testatrix." See, also, Harrison v. Harrison, 213 Ala. 418, 105 So. 179; Schowalter v. Schowalter, 217 Ala. 418, 116 So. 116.

■ In construing a will, "general words or expressions in one part of the will may be limited or controlled in their application by the language of another part". 69 Corpus Juris 109.

The trouble here is in reconciling the first paragraph of clause "Third" with the next two paragraphs of the same clause. The first paragraph of "Third" gives and bequeaths to his wife, Lena, all of his property real and personal except $4,000 bequeathed in clause "Second". The second paragraph of clause "Third" directs his property to be kept together until the death of his wife, and upon her death for it to be divided between Pauline and Cecile, the two daughters of his brother Isaac. Those daughters were both living when the testator died. But Pauline died before Lena. The third paragraph of clause "Third" provided that the partnership with his brother was to be continued "in the name of my (his) estate" until the time of such division.

It will be noted that the first paragraph of clause "Third" does not in terms describe the nature of the title the wife was to take. That nature of title was manifested in the second paragraph of clause "Third".

■ It is clear to us that the will here in question is subject to the foregoing principles of construction. It means that a life estate was granted to his wife Lena by Marcus, the testator. Also that she and Isaac were appointed executors, and it gives them certain directions and powers which made them also testamentary trustees, with Lena the beneficiary as long as she lives, and then the property should pass to Pauline and Cecile, the daughters of Isaac, free from the trust. Lena could be the beneficiary for her life of a trust of

which she was a cotrustee. She was also a trustee in equity for the remainder interests by virtue of being a life tenant. Ralls v. Johnson, 200 Ala. 178, 75 So. 926; Gurley v. Bushnell, 200 Ala. 408, 76 So. 324; Amos v. Toolen, 232 Ala. 587, 168 So. 687; Frye v. Community Chest, 241 Ala. 591, 4 So.2d 140(13).

It is next contended that under the will of Marcus it was not intended that the remainder interest should vest until the death of Lena, to whom was given a life estate, and that it did not vest in Pauline because she died before Lena died. The contention being that the paragraph of the will providing for a division of the estate at the death of Lena among the two daughters of Isaac has the effect of postponing the vesting of the title because there could not be a division at that time to include one who had died before that time.

But we are not disposed to give such a literal interpretation to those terms. In fact they have been distinctly construed to the contrary. As we noted in the case of Graves v. Wheeler, supra, the provision in a deed was that at the death of the wife of the grantor all of his property " 'shall be equally *divided* between my lawful children.' " The Court held that it vested in the lawful children an interest effective at the time of the execution of the deed and that they took as purchasers under the deed, and that there was no provision to make the vesting contingent.

In the case of High's Adm'r v. Worley's Adm'x, 32 Ala. 709, a bequest was made in these words: "It is my wish and desire, that all the lands which I own adjoining the town of Selma may be held and retained by my executor, for the use and support of my wife and children, together with two female slaves (naming them), all the household and kitchen furniture, and stock of every description whatsoever, until my daughter Fanny Ann shall arrive at the age of sixteen years; then to be sold, and the proceeds *equally divided* between my wife and children, share and share alike." The Court observed in referring to the rules so well understood and ap-

plicable to the proper interpretation of such a clause:

"In the will which we are considering, there is not a qualifying word or clause, which shows that *time* was made of the substance of the gift. The whole property was dedicated to the use and support of testator's wife and children, until Fanny Ann should attain to the age of sixteen. Then it was to be sold and divided between his wife and children, share and share alike. None of the words are found in this will, which are usually understood as expressing contingency; such as, *if, in the event,* etc. * * *

"Fanny Ann arrived at the age of sixteen, as the bill avers, some time in 1846. Till that event happened, no legatee had any right to call for distribution. Mrs. High (one of the children) died before 1846. Hence, during her life, she had no right to call on the administratrix to distribute, or give to her any portion of the estate. No administration was taken out on the estate of Mrs. High until a short time before this bill was filed, in 1855. The claim of her administrator for distribution of her father's estate under the will, was neither barred nor stale."

In our recent case of Springer v. Vickers, 259 Ala. 465, 66 So.2d 740, the Court was called upon to determine when a remainder vested, whether at the time of the death of the testator or at the termination of the precedent estate. The opinion of the Court discusses very fully the principles of law which have application, including those referred to in High's Adm'r v. Worley's Adm'x, supra. The Court was dealing with a provision in a will devising property to testator's wife for life and at her death to certain named persons, but providing that in the event any of such persons died prior to vesting such property that his or her share was to go to certain named persons. Those persons named as remaindermen were living at the time testator died. Prior to the death of testator's wife some of

them had died. The Court held that the estate vested in the remaindermen living at the time of the death of the testator. To the same effect is the case of McCurdy v. Garrett, 246 Ala. 128, 19 So.2d 449.

It is clear to us that the remainder interest provided for in the will of Marcus vested at his death. See section 140, Title 47, Code; Harrison v. Harrison, 213 Ala. 418, 105 So. 179; Betts v. Renfro, 226 Ala. 635, 148 So. 406; Watters v. First National Bank, 233 Ala. 227, 171 So. 280; George v. Widemire, 242 Ala. 579, 7 So.2d 269, 272; Allen v. Maxwell, 249 Ala. 655, 32 So.2d 699. The cases cited by appellee do not conflict. Pauline and Cecile were both living when Marcus died, so that there was no lapse. See section 16, Title 61, Code, referred to above. Their interest descended in such case as provided by statute. Sections 1 (2) (3) (4), 10 and 12, Title 16, Code.

The pleadings allege that the estates of Marcus and Lena are each being administered in equity. The provisions of section 322, Title 61, Code, referred to above, apply to the cross bill of Lucille Herman. It shows a right to have distributed to her and other distributees their respective share of the personal estate of Pauline which she took in remainder under the will of Marcus. There is no administration on her estate and none is necessary. So that equity has jurisdiction to distribute her estate without an administration. Marshall v. Crow's Adm'r, 29 Ala. 278; Teal v. Chancellor, 117 Ala. 612, 23 So. 651; Ex parte Baker, 118 Ala. 185, 23 So. 996; Winsett v. Winsett, 203 Ala. 373(15), 83 So. 117; Cook v. Castleberry, 233 Ala. 650, 173 So. 1.

But Pauline's estate in remainder is alleged to be in possession of the bank as the executor of Lena who was a co-executrix of Marcus, whence the property came, and in which Cecile had a half interest in remainder after Lena's death. A court of equity administering the estate of Lena has authority to distribute the estate of Marcus which came into her possession as executrix under his will and that without it going into the hands of the present administrator de bonis non of Marcus. This is so by the terms of section 322, Title 61, Code. So that the cross bill of Lucille is not without equity to obtain a distribution of the personal estate of Marcus. The case of Crews v. United States Fidelity & Guaranty Co., 237 Ala. 14, 185 So. 370, does not conflict. The present administrator of Marcus is a material party to such a proceeding. Crews v. United States Fidelity & Guaranty Co., supra.

The foregoing discussion does not apply to the cross bill of Betty Herman. This proceeding is dealing with the personal estate of Marcus to be distributed under the terms of his will. Betty is claiming in succession to the legacy of Pauline. She has no standing in this proceeding unless she has succeeded to an interest in the personalty of the estate of Marcus which passed to Pauline by the will. She claims that interest through her son Robert Herman who was the husband of Pauline. But such is not the result. When Pauline died, Robert inherited one-half of her personalty and the use of her realty for his life, section 12, Title 16, Code. The other half passed to Pauline's father and mother (Isaac and Mary). But Robert did not receive an interest in the realty which was descendable to his heirs (if that were material here). When he died he had a one-half interest in that share of the personalty of Marcus which passed to Pauline under the will. He had no other interest in the property which came from Marcus which survived his death. When he died his widow Lucille succeeded to that entire interest. Section 10, Title 16, Code. The result is that Betty Herman did not acquire any interest in the estate of Marcus and, therefore, her cross bill as revived has no standing, and the demurrer to it was properly sustained.

That leaves in operation the cross bill of Lucille, which has standing as we have shown. But it does not make as parties all those who are entitled to a share in the personal estate of Marcus which passed under his will. They should all be made parties, High's Adm'r v. Worley's Adm'x, 32 Ala. 709, and are the successors in in-

terest of both Pauline and Cecile, now deceased.

As we have said, when Pauline died one-half of her personalty passed to Robert and on to Lucille: the other half passed to her father and mother in equal parts. Section 1(2), Title 16, Code. The father has since died, leaving as his distributees his widow Mary and daughter Cecile. Mary was therefore properly made a party to the cross bill. When Cecile died, she left a husband Sidney Simon and her mother Mary. Sidney Simon inherited one-half of her personalty, section 1(4), Title 16, Code, and the other half went to her mother Mary, section 1(4), Title 16. So that Simon should be made a party, and Mary is already a party. The cross bill makes as parties the bank as executor of Lena, and Mary individually and as executrix of Isaac. Simon is made a party to the original bill but not to the cross bill, so that he can protect himself although he should be formally made a party to the cross bill of Lucille.—Equity Rule 26, Code 1940, Tit. 7 Appendix.

Insofar as the cross bill seeks to have granted the relief sought in the original bill, it has no standing. A cross bill ordinarily is not proper to obtain the relief available to respondent on the original bill. Becker Roofing Co. v. Meharg, 223 Ala. 163, 134 So. 864. That feature of the prayer should be disregarded. There is equity in the cross bill for the reasons which we have discussed. The relief is available on the prayer for general relief.

There is no ground of demurrer addressed to the cross bill which seems to be well taken and, therefore, it was error to sustain the demurrer. The decree in that respect should be reversed and the cause remanded with leave to amend the cross bill by Lucille so as to bring directly into its scope Sidney Simon who is interested in the relief there available and to include an appropriate prayer.

The decree sustaining the demurrer to the original bill as amended and the decree sustaining the demurrer to the cross bill of Betty Herman, as revived, should be af-

firmed. The decree sustaining the demurrer to the cross bill of Lucille Herman should be reversed and the cause remanded with leave to amend the cross bill of Lucille Herman within twenty days.

The foregoing opinion was prepared by FOSTER, Supernumerary Justice of this Court, while serving on it at the request of the Chief Justice under authority of Title 13, section 32, Code, and was adopted by the Court as its opinion.

Affirmed in part, and in part reversed and remanded.

LIVINGSTON, C. J., and LAWSON, STAKELY and MERRILL, JJ., concur.