130 So.2d 378

FIRST NATIONAL BANK OF BIRMINGHAM and Mary Ruth Kincaid, as Co-Executors, etc., et al.

v.

ST. CLAIR COUNTY.

7 Div. 446.

Supreme Court of Alabama.

May 25, 1961.

John H. Martin, Pell City, for appellants.

Maurice F. Bishop, Birmingham, and Starnes & Holladay, Pell City, for appellee.

**248**

GOODWYN, Justice.

This is an eminent domain proceeding which originated in the probate court of St. Clair County upon application filed therein by St. Clair County (appellee) to acquire, for use as part of a limited access interstate highway, certain lands belonging to appellants. From the award of $25,715 there made, both the county and the property owners appealed to the circuit court of St. Clair County where a trial de novo was had before a jury. It was stipulated that the only question to be resolved by the jury was the amount of damages and compensation to which the owners were entitled. The jury returned a verdict for $22,500 and judgment thereon was duly rendered. The property owners' motion for a new trial being overruled, they brought this appeal from the final judgment and the order overruling their motion for a new trial.

There are ten assignments of error. The first nine charge error in denying appellants' motion for a new trial. The insistence is that a statement made to the trial judge by one M. L. Lewis, a bystander and stranger to the suit, which appellants contend was made in the presence of some of the jurors during a recess in the trial, was so prejudicial as to call for a new trial.

The remaining assignment of error, No. 10, is as follows:

"10. The Court erred in excluding the testimony of Edgar Dickey from the consideration of the Jury empanelled for the trial of this cause (Tr. 165-166). Mr. Dickey being then and there a tenant upon the lands sought to be condemned, which tenancy afforded to him knowledge which would enable him to testify in regard to the condition of the value of the lands sought to be condemned."

Assignments of error 1 through 9.

It appears that during a recess of the trial Mr. Lewis came up to the trial judge in the lobby of the courthouse and made this statement to him: "They better not bring out in court what those streets and alleys are being used for at night." At the time, the lobby "was pretty well crowded", but how many jurors heard the remark is not made clear. One of the jurors made an affidavit that he "and several other jurors were standing in a group when one M. L. Lewis made certain statements in regard to the conditions of the roads on the Martin property, the substance of the law suit"; that "these statements were heard by me and I assume by the other jurors and also were overheard by Judge Frank B. Embry who was trying the case, because the Judge then turned to Mr. Lewis, criticized him and told him to make no more statements like that as there were jurors in his presence."

Counsel for appellants testified they knew nothing of the incident until after the trial.

█ There is nothing to show that Mr. Lewis was interested in the suit in any way. As far as the record discloses, he was a complete stranger to the suit and had no connection whatever with any of the parties or counsel. Apparently, his remark had reference to the use of the streets as a sort of "lovers' lane", as suggested in briefs. But how this remark, even if heard by the jurors, might have exerted any influence on the jury, to appellants' injury, in arriving at the amount of compensation to be awarded is difficult to perceive. Clearly, on the basis of the record before us, we cannot say that the trial court abused its discretion in denying appellants' motion for a new trial on this ground.

Assignment of error 10.

██ We are unable to determine from this assignment just what ruling of the court appellants consider to be erroneous. There are several rulings on pages 165-166 of the record with respect to Mr. Dickey's testimony. In this connection, we note that appellants, in their brief, seem to take the position that the trial court excluded all

of Mr. Dickey's testimony. While there is a ruling indicating such an exclusion, there is also another ruling showing an intention to exclude only that part relating to the value of the property. Manifestly, from reading this assignment it is by no means clear which of these rulings is relied on. If an assignment of error is uncertain and indefinite as to the particular error complained of, this court will decline to consider it. The assignment should state concisely in what the error consists. Supreme Court Rule 1, 261 Ala. XIX, Code 1940, Tit. 7, Pocket Part, Appendix; Wetzel v. Hobbs, 249 Ala. 434, 31 So.2d 639; Jackson Lumber Co. v. Butler, 244 Ala. 348, 353, 13 So.2d 294; Globe & Rutgers Fire Ins. Co. v. Jones, 213 Ala. 656, 657, 106 So. 172; Provident Life & Accident Ins. Co. of Chattanooga, Tenn. v. Priest, 212 Ala. 576, 578, 103 So. 678.

As said in Globe & Rutgers Fire Ins. Co. v. Jones, supra:

"An assignment should state concisely in writing in what the error consists. It should particularize the ruling claimed to be erroneous. Supreme Court rule 1, supra. When the assignment is so uncertain and indefinite that the particular error complained of cannot be definitely ascertained from the record, this court will decline to consider it. * * *" [213 Ala. 656, 106 So. 173].

From Wetzel v. Hobbs, supra, is the following:

"Rule 1, requiring assignments to be written upon the transcript concisely pointing out the errors relied on for a reversal, is in the nature of a rule of pleading and, in the appellate court, performs the same office in all material respects as the initial pleading in a court of original jurisdiction. Precision is of the essence of this rule of practice. * * *"

The judgment appealed from is due to be affirmed.

Affirmed.

LIVINGSTON, C. J., and SIMPSON and COLEMAN, JJ., concur.