209 So.2d 653

**H. Maddox BRITTAIN et al.**

v.

**James C. INGRAM et al.**

**7 Div. 753.**

Supreme Court of Alabama.

April 11, 1968.

Hooton & Hooton, Roanoke, for appellants.

Dempsey & Hardegree, Ashland, for appellees.

PER CURIAM.

This case involves an interpretation of the last will and testament of John H. Ingram, Sr., deceased, and from a final decree with respect thereto this appeal was taken.

The suit originated in the Circuit Court of Clay County, in Equity, wherein the verified complaint of appellees sought removal of the administration of the estate of John H. Ingram, Sr., from the Probate Court of Clay County into the Circuit Court of said county, in Equity, and a construction of the will of said decedent. A copy of the will was attached to the complaint, along with copies of correspondence between appellees and the executor.

The will had been admitted to probate in the Probate Court of Clay County in 1961 and the administration of said estate was pending in said court when the executor, H. Maddox Brittain, filed his accounts and vouchers for a final settlement of the estate. The accounts were filed July 20, 1965.

Upon the filing of said verified petition or complaint, an order was made and entered by the Circuit Court, August 10, 1965, removing said administration to said Circuit Court, in Equity. Respondents (appellants) filed a motion to re-transfer said cause to the Probate Court, and also filed a demurrer to the bill of complaint. At a hearing on the motion to re-transfer, testimony (not incorporated in the transcript) was offered. The trial court denied the motion to re-transfer and also overruled the demurrer to the complaint. Demurrer was overruled after the complaint was amended by offering to do equity. Respondents filed an answer to the amended bill of complaint.

The cause was subsequently set for trial and when it came on to be heard, was argued and submitted. The case was taken under advisement and on August 5, 1966, a final decree was rendered from which, as we have noted, respondents have taken this appeal.

It appears from the evidence that the deceased testator had been married three times and had three daughters, all living, by his first wife. They were Mrs. Wilian I. Brittain, wife of one of the executors; Ivilyn I. Lowery and Eloree I. Dominey. These three daughters, together with Mrs. Hettie B. Ingram McCray (widow of testator), H. Maddox Brittain, and John H. Ingram, executors under the will, are the appellants. Decedent had two children by his second wife. These two children, James C. Ingram and Isabelle I. Wilbur, are appellees. He had no children by his third wife, who is now Mrs. McCray.

Decedent owned his home in the town of Lineville, Alabama, and, among other things, he undertook to dispose of his home by the terms of his last will and testament. This disposition of the home is the subject of this litigation. Without dispute, Mr. Ingram was the author and drafter of his own will without the aid of legal advice.

. When the petition for final settlement of the estate was filed, appellees questioned by correspondence with the executors the disposition of the home place. It was the contention of the executors that the three daughters by the first marriage were willed the home place to be theirs absolutely and in fee simple. The two children by the second marriage (appellees) disagreed with this contention. Correspondence indicating the disagreement was attached to the verified amended complaint.

Primarily, the dispute concerns itself with the interpretation of Sections 8 and 11 of the will. We quote these two sections:

"Sec. 8. My will is that, in case my wife is not living at the time of my death, the un-paid and un-used benefit gifts bequeathed to her, and all other un-paid benefit gifts named herein shall remain and revert to the proceeds of my estate and shall be paid equally only to my then living children at the time of final settlement of my estate. This division of gift benefits to my children is in addition to the gifts to them already made herein and only to the children living at final settlement of my estate."

"Sec. 11. My will is that I give and devise my said home, lot and house thereon, in Lineville, Ala., to own and hold in fee simple, to my three daughters by my first wife, namely Wilian Ingram Brittain, Ivilyn Ingram Lowry and Eloree Ingram Dominey, this devise to become and to operate only after the tenure and hold of said home by my widow is terminated and or released by my widow, Hettie B. Ingram, for a valuable consideration of about $2000.00 dollars; my said three daughters, or either two or one of them, when living, may keep, use and own said home, as they or she may think best, for their own benefit, or place proceeds of sale to the credit of my estate for division as directed in Section #8 herein.

"This gift and devise is made to my said three daughters for love and to keep said home for the use and the kin of my family; and if any of said daughters is not living at time of the final settlement of my estate, then my executors are authorized to sell and dispose of said home, lot and house thereon, according to law and pay the proceeds of sale equally to my living children per Section #8 herein; and provided further if said home is not already disposed of before my death."

Following the death of testator, in accordance with the terms of the will the three daughters by the first marriage paid Mrs. Hettie B. Ingram, the widow, the sum of $2,000 for a release of her claim on said home.

It was the contention of appellees that the decedent intended to provide by the terms of the will for a division of the proceeds from the sale of the home between "his then living children at the time of final settlement" of his estate, and that the three daughters by the first marriage, so long as any of them lived, would have the use and management and control of the same, with the discretion to determine whether or not they would continue to keep same, or let it be sold and the proceeds divided between his "then living children," and in the event none of his children were living at the time of final settlement, then the executors were to sell the property and divide the proceeds between his "then living children."

. It was the contention of respondents that Section 8 of the will was conditioned in the event of John Ingram's wife being deceased at the time of his death; that as she was living at such time Section 8 is without force and effect. Appellants further argue that Section 8 refers only to "monetary gifts," and was not intended to refer to the home place in the event it was sold. Their main contention both in the lower court and on this appeal is to the effect that under the terms of the will the home place, upon the death of testator, vested in the three daughters by the first marriage in fee simple.

The transcript reveals that appellants listed thirty assignments of error for rever-

**162**

sal of the decree rendered by the lower court. In appellants' brief, however, only Assignments 22, 23, 24, 25, 26 and 27 are specifically mentioned. Indirect reference is made to Assignment 11 where it is contended by appellants that the Circuit Court erred in overruling Ground 3 of the motion to re-transfer the administration of the estate to the Probate Court. Although no specific reference is made, there is also indirect reference made to Assignments 13, 14, 15 and 16 wherein appellants assert that the trial court erred in overruling certain grounds of their demurrer.

Further, although appellants set forth three general propositions of law in their brief, at no point in the argument are these propositions clearly referred to; nor, indeed, do appellants in their argument cite any cases or give any authority in support of their contentions.

■ Appellees, we think, correctly insist that assignments of error not substantially argued will be deemed waived and will not be considered by the court. Rule 9, Revised Rules of Practice in the Supreme Court, 279 Ala. XXVI, effective June 1, 1955, as amended March 26, 1966. This court will consider of legal efficacy only those assignments insisted on in appellant's brief and sufficiently argued, and adequate specification of errors relied upon is necessary if our review is to be invoked. Smith v. Jackson, 277 Ala. 257, 169 So.2d 21. Assignments of error not so specified and sufficiently argued are deemed to be waived and will not here be considered. State v. Farabee, 268 Ala. 437, 108 So.2d 148; McGehee v. Frost, 268 Ala. 23, 104 So.2d 905; Talbot v. Braswell, 266 Ala. 578, 98 So.2d 7. Accordingly Assignments 2, 3, 4, 5, 6, 7, 8, 9, 10, 12, 18, 19, 20, 21, 28, 29 and 30 will not be considered.

Assignments of Error 11, 13, 14, 15 and 16, as before mentioned, are indirectly referred to in appellants' brief. It is contended in Assignment 11 that Ground 3 of the motion to re-transfer should have been granted as no special equity was shown in

the cause. Also it is insisted in Assignment 13 that Ground 1 of the demurrer to the amended bill of complaint should have been sustained for there was no special equity warranting the transfer of the estate to the Circuit Court.

Also it is insisted that:

"Demeurrer [sic] #12 should have been sustained, its overruling error, because as shown in said Demeurrer [sic] for no where in said Exhibit 'A', the Will is there any mandatory requirements as to the 3 daughters of the 1st marriage, and there is only an Option therein for them if they so desired;"

The foregoing assertion, quoted verbatim from appellants' brief, is not clear to us. (Assignment 14)

"Demeurrers [sic] # 17 and 18 show that the allegations of paragraph 4 of the Bill of complaint, * * * and as shown by the Will, Exhibit 'A' to the Complaint are inconsistent [sic] and incongrouous [sic] as to the allegations contained in paragraph 4 of the bill and when considered with the said paragraphs 8 and 11 of the Will or Exhibit 'A';" (Assignments 15 and 16).

At no point in their brief did appellants specify of what Ground 3 of the motion to re-transfer consisted. Nor did they indicate of what Grounds 1, 12, 17 and 18 of the demurrer consisted. No authority was cited in support of these allegations nor any reference made to appellants' Propositions of Law.

As was stated by this court in First National Bank of Birmingham et al. v. St. Clair County, 272 Ala. 247, 249, 130 So.2d 378, 379:

" * * * If an assignment of error is uncertain and indefinite as to the particular error complained of, this court will decline to consider it. The assignment should state concisely in what the error consists. * * *"

Supreme Court Rule 1, 279 Ala. XXIII, also Code 1940, Title 7, Appendix. We

quoted from Globe & Rutgers Fire Ins. Co. v. Jones, 213 Ala. 656, 657, 106 So. 172:

"An assignment should state concisely in writing in what the error consists. It should particularize the ruling claimed to be erroneous. Supreme Court rule 1, supra. When the assignment is so uncertain and indefinite that the particular error complained of cannot be definitely ascertained from the record, this court will decline to consider it. * * "

See also Beasley-Bennett Electric Co. v. Gulf Coast Chapter, etc., 273 Ala. 32, 134 So.2d 427, and Ferrell v. Opelika, 144 Ala. 135, 39 So. 249.

It thus appears, in this respect, appellants' assignments were in part violative of Supreme Court Rule 1, supra; further, no authority or cases were cited in appellants' argument in support of these allegations; the brief did not conform to Supreme Court Rule 9, Revised Rules, supra. See Burch v. Southeastern Sand and Gravel Co., 278 Ala. 504, 179 So.2d 83; Shelby County v. Hatfield, 264 Ala. 488, 88 So.2d 842.

■ This court has held that the Supreme Court Rules are directory and not jurisdictional and can therefore exercise its discretion in certain instances and consider some of the errors claimed by the appellant. Wilson v. Howard, 266 Ala. 636, 98 So.2d 425; Wood v. Wood, 263 Ala. 384, 82 So.2d 556.

For this reason we will consider the argument raised by appellants in Assignments of Error 11 and 13 to the effect that there was no showing made by appellees of a special equity warranting the transfer of the administration of the will to the circuit court, and that the circuit court, because of the absence of a showing of such special equity, erred in refusing to grant appellants' motion to re-transfer.

Appellees argue that whenever the provisions of a will are of doubtful construction or of disputable solution as to which rational minds might differ, a judicial construction of said will is required, and the

jurisdiction of a court of equity arises. Kaplan v. Coleman, 180 Ala. 267, 80 So. 885; Calhoun v. Thomas, 274 Ala. 111, 145 So.2d 789.

■ Kaplan v. Coleman, supra, involved a petition by the only heir at law of testator to contest and annul the will of the said testator. Respondents filed a plea in abatement alleging a pending suit for testamentary construction and the circuit court sustained the plea. In overruling the decision of the lower court, this court pointed out that a suit for construction of a will is in effect to determine the rights of the parties under the will and that when a will is of doubtful construction the jurisdiction of the court of equity arises. As stated by Mr. Justice Merrill, speaking for the court in Calhoun v. Thomas, supra, when provisions of a will are of such doubtful construction or of a disputable solution as to which rational minds may well differ, a judicial construction thereof is required. See also Wilson v. Skelton, 262 Ala. 504, 80 So.2d 633.

■ Title 13, § 139, Code 1940, Recompiled 1958, provides for the removal of the administration of estates from the probate courts to the circuit courts. Where, as here, the probate court has taken jurisdiction for a final settlement of the will it is necessary that the bill set up some special equity which the probate court cannot protect before there can be a removal under this section. See Ex parte McLendon, 212 Ala. 403, 102 So. 696. It is appellees' contention that the will here establishes such a special equity as will warrant the transfer.

The bill avers that a question exists concerning the construction of the will; the will itself and certain letters between appellees and one of the appellants, H. Maddox Brittain, executor, were attached as exhibits to the bill. Such exhibits are considered as being a part of the bill itself. Rule 11, Alabama Equity Rules, Title 7, Appendix, Code 1940, Recompiled 1958. Appellees insist that the averments of the

complaint and the exhibits attached were sufficient to establish a special equity warranting the transfer.

The complaint in effect avers that this action was instituted by James C. Ingram and Isabelle I. Wilbur, children of testator by his second marriage; and respondents are H. Maddox Brittain, executor, and Mrs. Wilian I. Brittain, Eloree I. Dominey and Ivilyn I. Lowery, the three daughters of testator by his first marriage, and John H. Ingram, III, grandson of deceased. Also it averred that the estate of deceased, John H. Ingram, Sr., consisted, among other things, of his home place in Lineville, Alabama, as referred to in the will which said decedent purported to dispose of in accordance with Paragraphs 8 and 11 of his will. The complaint further averred that under the terms thereof all the children of decedent would share in the proceeds of the sale of said home place, but that the executor of the will, H. Maddox Brittain, has arbitrarily taken the position that the three daughters of the first marriage own the property in fee simple and may dispose of the same as they see fit and need not share the proceeds thereof with any of the other beneficiaries under the will. The bill prays, among other things, that the circuit court construe the will of said John H. Ingram, Sr., and particularly Paragraphs 8 and 11.

The letters attached to the complaint as Exhibits B through G concern the interpretation of Paragraphs 8 and 11 given to the will by one of the complainants, James C. Ingram, to the effect that by virtue of the terms of said will the home place should be sold and the proceeds thereof be equally divided among all the then living children of the deceased at the time of final settlement of the estate. These letters also reveal that it is the determination of the executor that the three daughters by the first marriage acquired the home place in fee simple and therefore have a right to dispose of it as they see fit.

In Crossland v. First National Bank of Montgomery, 233 Ala. 432, 172 So. 255, this court, in reversing the decision of the lower court sustaining demurrer to a bill filed by an executor seeking removal of an estate to the circuit court, again asserts that whenever some special equity is averred which the probate court cannot protect, the circuit court assumes jurisdiction.

More closely related to the present case is Bell v. Killian, 256 Ala. 24, 53 So.2d 604. There, in an action by the administrator of an estate to remove the administration thereof from the probate court to the circuit court, in equity, this court, in upholding the action of the lower court in overruling respondent's demurrer to the bill, stated that where there are disparate interpretations placed upon several somewhat conflicting clauses of a will by the respective parties, its construction will be necessary in connection with a determination of the proper administration thereof; that this is such special equity as will authorize removal of the administration into the circuit court. This court stated:

"It is also the general rule that where the probate court could not determine the issues presented by the bill and circumstances are such as to render the power of that court inadequate to do complete justice, the cause may be removed to the equity court. Sewell v. Sewell, 207 Ala. 239, 92 So. 475; Marshall v. Marshall, 86 Ala. 383, 5 So. 475." (256 Ala. 28, 53 So.2d 607)

■ From the cases cited and a review of the bill itself, we think the circuit court was justified in finding that there was such a special equity as would warrant a transfer of the estate and will under Title 13, § 139, Code 1940.

We now come to a consideration of those assignments of error specifically referred to in appellants' brief. Again, no cases or authorities are cited in support of these assignments and only a tenuous reference, at best, is made to the propositions of law in appellants' brief. We, however, will exercise our discretion and consider the points raised. Assignments of Error num-

bers 22, 23, 24, 25 and 27 deal with the very core of this cause of action—the construction of the will.

Assignment 22 contends that the lower court erred in that part of the decree where it is said that it was the intention of testator that the home be kept as a home place by the three daughters of the first marriage and they or any of them to say when the home place should be sold.

Assignment 23 relates to the circuit court's ruling that no final settlement of the estate could be had until the home was sold, whether said three daughters were living or not, and that if sold during their life the proceeds had to be in the final settlement.

Assignment 24 assigns as error that portion of the lower court's decree that the proceeds of the sale of the home should be divided equally among the five children of decedent then living at the time of the final settlement had before or after the death of the three daughters of the first marriage.

Assignment 25 relates to that portion of the decree ruling that final settlement could not be had until the home place was sold and the proceeds of same placed in the estate to be divided in accordance with Paragraph 8 of the will "and that two of the three named daughters by the first marriage of said deceased would be deemed to have relinquished their right to keep the same homestead intact for their use and benefit and for the use and benefit of their next of kin of the testator by consenting to the hearing on the application for final settlement which was filed in the probate court of Clay County, Alabama."

Finally, Assignment 27 alleges error in the ruling by the circuit court that the executors should not proceed with the final settlement until the home was sold by the executors, in accordance with the terms of the will.

It appears to be the contention of appellants that decedent was a business man, engaged in the banking business for many years, who drew his own will; that he knew the meaning of the words "fee simple," and it was his intention, as expressed in Section 11 of the will, that the home place should pass to his three daughters in fee simple. Further, that Section 8 of the will has no application here because it is to take effect only "in case my wife is not living," and that she was now living. Appellants also argue that this Section 8 applies only to "monetary gifts," and can have no effect upon the transfer of the home. Finally, appellants contend that John Ingram, Sr., in his will used the term "any" when referring to his three daughters to mean the same as "none." With this point appellees are in agreement.

Section 8 of the said will says in substance that in case testator's wife is not living at the time of his death the unpaid and unused benefit gifts bequeathed to her and all other unpaid benefit gifts named therein shall remain and revert to the proceeds of his estate and shall be paid equally only to his then living children at the time of final settlement of his estate.

Section 11, supra, of the will says in substance that the testator gives his homestead, to own and to hold in fee simple, to the three daughters by his first wife, this devise to become and to operate only after the tenure and hold of said home by his widow is terminated or released by said widow for a valuable consideration of about $2,000; his said three daughters or either two or one of them, when living, may keep, use and own said home, as they or she may think best, for their own benefit, or place proceeds of sale to the credit of his estate for division as directed in Section 8; that this gift and devise is made to said three daughters for love and to keep said house for the use of the kin of his family, and if any (none) of said daughters is not living at the time of the final settlement of his estate, then the executors are authorized to sell and dispose of said home, according to law, and pay the proceeds of sale equally to his living children per Section 8.

It is then appellants' theory that the homestead goes in its entirety and in fee simple to the three named children of the first marriage. Appellees contend rather that under the terms of the will the home place should be sold and the net proceeds thereof be equally divided among the five living children of decedent at the time of final settlement.

Appellants state as their first proposition of law that in interpreting doubtful or ambiguous expressions in a will, courts will consider the condition of testator's family and estate to ascertain his intention, and further that such intention may be gathered from the will itself and from circumstances which surrounded testator when the will was made. Appellants cite Montgomery v. Montgomery, 236 Ala. 161, 181 So. 92; McGehee v. Smith, 248 Ala. 174, 26 So.2d 861; Adams v. Jeffcoat, 252 Ala. 501, 41 So.2d 183; Sellers v. Sellers, 270 Ala. 173, 117 So.2d 386.

With the proposition set forth by appellants, we are in agreement, for where there are ambiguous or doubtful expressions in a will, it is the purpose of the court to make a determination of what the testator intended. The mind of the testator is the law of the will, if the intent is lawful. Betts v. Renfro, 226 Ala. 625, 148 So. 406; Austin v. Pepperman, 278 Ala. 551, 170 So.2d 299.

The circumstances surrounding testator, the condition of testator's family and estate are indeed, as pointed out by appellants, a means of ascertaining his intent. The facts here established show that testator had been a businessman, a banker; that at the time of his death his third wife and grandson, John Ingram, III, were living in the house with him. We fail, however, to see how these facts establish appellants' claim that testator intended the house to pass to the three daughters by his first wife. At no point in the record is there revealed any testimony to the effect that decedent had ever expressed such a desire. It would seem that, in this regard, appellants' main contention is that because decedent had been a banker he knew the meaning of the term "fee simple," and that in using such words it was his intention that the title to his home should pass to his three daughters in that manner.

As pointed out by appellees, however, there is a presumption that legal terms in a will are used in a legal sense, but such presumption is conclusive only where an entire absence of other terms suggests a different meaning. Schowalter v. Schowalter, 217 Ala. 418, 116 So. 116. In this Schowalter case, testator's will seemed to leave the residue of his estate to his wife in fee simple, yet in a subsequent clause it was stated that at the death of decedent's wife the remainder of his estate was to be equally divided among his children. As stated by this court in that decision, the mind of the testator is the law of the will, unless unlawful in purpose. See Meglemry v. Meglemry, 222 Ala. 229, 131 So. 906, wherein this court asserted as above, that the intent of the testator, if lawful, is the law of the will. And, further, that technical rules will yield before testator's manifest intention to the contrary, as expressed in the will.

The facts of this case further disclose that testator was not an attorney, and though he may have been an adept businessman such is not an answer to the fact that he was not learned in the law. The fact that a will was inartificially drawn by an unskilled hand should be considered in its construction. Brizendine v. American Trust & Savings Bank, 211 Ala. 694, 101 So. 618; Castleberry v. Stringer, 176 Ala. 250, 57 So. 849.

We therefore arrive at the conclusion that the use of the words "fee simple" in Section 11 was not conclusive as to testator's intent. It then becomes necessary to determine the intention of decedent, John Ingram, Sr. As stated by this court in McGehee v. Smith, supra:

" *. * * The testator's intention, being the law of the instrument, must be gathered from the whole instrument, and all of its parts, after taking due consideration of the manifest scheme of the testator to ascertain its spirit rather than its letter. * * *" (248 Ala. 178, 26 So.2d 864)

Appellants raise the proposition that where an estate or interest is given in one clause of a will in clear and decisive terms, the interest cannot be taken away or diminished by raising a doubt upon the extent or meaning of a subsequent clause, or by reference therefrom, or by subsequent words that are not clear and decisive as the words of the clause giving the interest of estate. Ralls v. Johnson, 200 Ala. 178, 75 So. 926; Pearce v. Pearce, 199 Ala. 491, 74 So. 952; Duncan v. De Yampert, 182 Ala. 528, 62 So. 673; Sewell v. Byars, 271 Ala. 148, 122 So.2d 398.

 In Ralls v. Johnson, supra, the will contained inconsistent and seemingly repugnant clauses—where in one clause the residue of the estate was left to his wife and children, and the question arose as to whether a subsequent clause setting up a testamentary trust cut down the estate disposed of in the earlier clause. The lower court held that it did, and that decision was affirmed by this court on appeal. The court there conceded that where an estate or interest is given in one clause in clear and decisive terms, it cannot be taken away or diminished by raising doubt upon the extent and meaning of a subsequent clause, or by reference therefrom, or by any subsequent words that are not clear and decisive as the words of the clause giving the interest. However, as this court there pointed out, the testator's intent must be gathered from the whole will, when the parts are construed in relation to each other, "taking due consideration of the testator's scheme manifested by the will itself, so as, if possible, to form one consistent whole." That conflicting clauses in a will must, if possible, be so reconciled as to make each

operative and, if not, the latter clause must prevail. Citing the *Ralls* decision, it was also stated in Pearce v. Pearce, supra, that in case of irreconcilable repugnancy between two clauses of a will, the latter usually prevails over the former, as being the testator's last expression of intent. But this rule never applies unless every attempt to give the whole will such a construction as will render each and every part thereof effective. See also Fowlkes v. Clay, 205 Ala. 523, 88 So. 651; Patterson v. First National Bank of Mobile, 261 Ala. 601, 75 So.2d 471. In the case of Curlee v. Wadsworth, 273 Ala. 196, 198, 136 So.2d 886, 888, this court stated:

"The fundamental rule in the construction of wills is that the intention of the testator is the controlling factor, and his intent must be gathered from the will in its entirety, and each clause or provision should be so interpreted as to avoid an irreconcilable conflict when reasonably susceptible of such construction. Sewell v. Byars, 271 Ala. 148, 122 So.2d 398; Orr v. Helms, 217 Ala. 603, 117 So. 61."

 Upon the examination of Paragraphs 8 and 11 of the will, we are of the opinion that the lower court properly ruled that it was the intention of testator that the proceeds of the sale of the home should be divided equally among the decedent's five children. Testator's intention is the pole star to guide the court in the construction of the will. Weil v. Converse, 273 Ala. 495, 142 So.2d 245. In arriving at testator's intention the court should consider the instrument as a whole and not construe any paragraph separately. Wilson v. Skelton, 262 Ala. 504, 80 So.2d 833; Smith v. Nelson, 249 Ala. 51, 29 So.2d 335. When the will is thus read in its entirety it appears that it was not intended that Paragraph 8 be conditioned in the event of his wife dying before testator. It simply directs what should happen in the event of that eventuality. Said Paragraph 8 further provides that the five children were to share equally

in the division of the estate under this clause.

When Section 11 is read in connection with said Section 8, it becomes manifest it was not the intention of testator for his three daughters to acquire the home in fee simple. Rather under the more logical construction of Section 11, the three mentioned daughters were to have the home for their own use and the use of decedent's family. They could elect, however, to sell the said home, in which instance the proceeds were to revert to the estate and be equally divided among the five children. As further evidence of this intent is the second paragraph of Section 11 to the effect that if none of the daughters is living at the time of the testator's death, the executors are authorized to sell said home and divide the proceeds among testator's then living children in accordance with Section 8.

We are of the opinion and so hold that the circuit court properly construed the will of the said John Ingram, Sr. We note appellants' proposition that the courts must take care they not make a will for testator, citing Austin v. Pepperman, 278 Ala. 551, 179 So.2d 299. We feel, however, that the circuit court did no more than effectuate that which the decedent intended.

Appellants' Assignment of Error 26 is without merit. It is there contended that the circuit court erred in its ruling that the two children of the second marriage should pay over to the three daughters of the first marriage $400 apiece, or a total of $800 as their proportionate share of the $2,000 paid by the three daughters to the third wife for her relinquishment of her homestead right. Appellants contend rather that the entire $2,000 should be repaid to the daughters. As pointed out by appellees, however, the lower court was endeavoring to provide for each of the five children of decedent who are now living to share equally in the amount of $2,000 as the five children were to share equally in the distribution of the proceeds from a sale of the home place. It would be unreasonable for the court to require the two appellees to stand the expense of the entire $2,000 in return for only two-fifths interest in the home place. The formula used by the court is the same as if the $2,000 were deducted from the purchase price and the balance distributed to each of the five children.

The decree of the circuit court is hereby affirmed.

The foregoing opinion was prepared by Bowen W. Simmons, Supernumerary Circuit Judge, and adopted by the court as its opinion.

Affirmed.

LIVINGSTON, C. J., and LAWSON and COLEMAN, JJ., concur.