Plaintiff Louis M. Pihakis ("Louis") appeals from a summary judgment granted in favor of defendant James M. Pihakis ("James"). We affirm.
The affidavits and depositions offered in support of, and those in opposition to, the motion for summary judgment reveal the following. In 1968, Louis obtained a piece of property located in Huntsville, Alabama, at a foreclosure sale. He assumed a first mortgage on the property and paid approximately $7,500 to acquire title. This property is the subject of this suit. In 1970, Louis was experiencing legal problems. He had been charged with violating various criminal laws concerning mail fraud and conspiracy. He pleaded guilty to these charges and was sentenced to a period of incarceration. Louis contends that at that time he and James orally agreed that James would oversee and safeguard Louis's interest in the Huntsville property.
A year later, in 1971, as a result of his legal problems, Louis had incurred legal fees due to the law firm of Beddow, Fullan Vowell in the amount of $25,000. Louis was unable to pay the entire amount, so he paid $5,000 in cash to the law firm and, in 1971, conveyed the Huntsville property to the law firm. Both Louis and his wife executed a statutory warranty deed transferring the property to Roderick Beddow, Jr., as trustee for the law firm. Louis contends that the property was conveyed as collateral for the remaining $20,000 owed to the law firm. The deed, however, did not indicate that the conveyance was for such purpose.
Frederick A. Erben, a member of the Beddow, Fullan Vowell law firm, stated in his affidavit that the law firm held title to the subject property through Mr. Beddow, as trustee, for approximately three years, until 1974. At that point, the firm was contacted by Louis, who, Erben said, reportedly stated that his brother James was interested in buying the property. Louis's wife, Pauline, stated in her affidavit that she was contacted by the law firm in 1974 and was told that the firm wanted the money owed to it by her husband. Pauline stated that she telephoned her husband (who was still incarcerated) and was instructed by him to contact James and arrange for James to pay the lawyers $10,000 and give the law firm a mortgage for the remaining $10,000 balance. Pauline stated that after contacting James, he agreed to pay the law firm Louis's legal fees and, in return, to have the property put in his name. Pauline stated that it was further explicitly agreed that James would hold the deed to the property as collateral until Louis paid him back. *Page 767 
Frederick A. Erben testified that James contacted the firm about purchasing the Huntsville property, and that after some negotiations, the firm agreed to sell the property and James agreed to buy. It was sold to him for $9,468 in cash plus a note for $10,000 secured by a second mortgage. He purchased the property subject to a first mortgage that had a balance of approximately $23,000; thus, his total investment was some $42,468. Roderick Beddow, Jr., as trustee, executed a deed conveying the property to James M. Pihakis. Frederick Erben further stated that the sale of the property by his law firm was made for the purpose of obtaining money in lieu of holding property that was not producing operable income and that there were no discussions or arrangements with Louis whereby this property was sold to James in trust for Louis or in any other capacity in behalf of Louis. "This was an outright sale of the property to James M. Pihakis," said Erben.
In March 1985 (14 years after the conveyance by Beddow to James), Louis concluded his probationary period and legal difficulties and requested that James convey the Huntsville property to him. James refused. Louis contends that the oral agreement between himself and James was that the property in Huntsville was being held in trust and as collateral until Louis repaid James for taking care of his attorney's fees.
On August 5, 1985, Louis filed suit against James, alleging breach of contract, fraud, conversion, and breach of trust. On January 16, 1986, James filed a motion for summary judgment, claiming that because there is no writing evidencing the alleged agreement concerning the real estate, any such oral agreement in connection with the property is barred by the Statute of Frauds. The trial court granted James's motion for summary judgment. The issue is whether Louis's cause of action is barred by the Statute of Frauds as a matter of law.
Louis seeks to prove his claims by establishing an oral trust agreement concerning the property, since there are no written documents evidencing the creation of a trust.
The traditional classification of trusts recognizes two main divisions: express trusts and trusts by operation of law. Trusts by operation of law are classified into resulting trusts and constructive trusts. Smith v. Davis, 352 So.2d 451
(Ala.Civ.App. 1977); see also 76 Am.Jur.2d Trusts § 189 (1975).
Ala. Code 1975, § 35-4-255, sets out the requirements for creating a trust in land.
 "No trust concerning lands, except such as results by implication or construction of law, or which may be transferred or extinguished by operation of law, can be created, unless by instrument in writing, signed by the party creating or declaring the same, or his agent or attorney lawfully authorized thereto in writing." (Emphasis added.)
By virtue of this statute, if there were an oral agreement between the parties as alleged by Louis, that agreement would be void ab initio. Smith v. Davis. The only way Louis can then attempt to prove an oral trust for his benefit is to satisfy one of the exceptions enumerated in this section: Louis must prove a resulting or constructive trust by operation of law.
The law in Alabama concerning resulting trusts states that they arise only where one has purchased property with the funds of another and has taken title in himself. Ledbetter v.Ledbetter, 271 Ala. 629, 126 So.2d 477 (1961); Smith v. Davis, supra. "Generally, a resulting trust will be presumed in favor of one who provides purchase money for land when title is taken in the name of another." Mayo v. Gortney, 468 So.2d 147, 149
(Ala. 1985). It is uncontradicted in this case that James purchased the property in question with his own funds and not the funds of Louis. Louis, however, cites Holman v. Weed,248 Ala. 179, 26 So.2d 721 (1946), which quoted from O'Rear v.O'Rear, 220 Ala. 85, 123 So. 895 (1929):
 "`Where one person makes a loan to another with which to purchase lands, and by mutual agreement a deed is made directly from the vendor to the lender as *Page 768 
security for the loan, the transaction partakes of the nature both of a resulting trust and a mortgage. A resulting trust because the money loaned becomes that of the borrower, and the title acquired with his money is taken in the name of another; a mortgage, because it is given as security for the debt due from lender to borrower.'"
248 Ala. at 181, 26 So.2d at 722.
There is no evidence in the record which indicates that James loaned Louis the money to purchase the property. Louis and his wife testified that, in 1974, the law firm wanted the remainder of the debt owed to it. Upon Louis's and Pauline's request, James paid off Louis's debt. In return, James received the property in issue from the law firm, which Louis contended was to serve as collateral for the money he then owed to James. Assuming this testimony to be true, it still does not show that James loaned Louis money to buy the Huntsville property. Rather, it shows that James loaned money to Louis to pay offLouis's legal bills. There is no evidence to support a finding of a resulting trust.
A constructive trust has been defined by this Court as follows:
 "`A constructive trust arises when one person, occupying a fiduciary position, or having placed himself in such position in relation to another that good faith requires him to act for the other and not for himself, acquires the title for the property in himself, in place of the cestui que trust. These cases involve fraud, or a breach of trust in acquiring the title to the property in himself.'"
Talley v. Talley, 248 Ala. 84, 87, 26 So.2d 586, 588 (1946), quoting from Butts v. Cooper, 152 Ala. 375, 44 So. 616 (1907). A constructive trust is a creature of equity which prevents unjust enrichment, and it is applied when property has been acquired by fraud or where it would not be equitable to allow it to be retained by him who holds it. Seals v. Seals,423 So.2d 222 (Ala. 1982). "The transaction of taking title in himself must be conceived in fraud." Talley, supra. The fraud prerequisite to the enforcement of a constructive trust must be implicit in the original transaction, not later. Ledbetter, supra. A "violation of a parol trust agreement or its subsequent repudiation is not of itself that character of fraud which will suffice to sustain the trust." Pierce v. Murphree,274 Ala. 20, 27, 145 So.2d 207, 214 (1962); Talley, supra.
In the present case, there is no evidence of fraud at the time Louis claims the parol agreement was entered into. The undisputed evidence is that the Huntsville property was transferred to the Beddow law firm "in payment of attorney's fees in 1971." The Beddow law firm, as the legal owner of the property, then transferred the property to James in 1974 to obtain money in lieu of holding property that was not producing operable income. The property was never transferred from Louis to James. There was no evidence that James fraudulently obtained the property from the law firm. Nor was there any evidence that James breached any duty owed to Louis.
Having reviewed the record and briefs of counsel, we find no evidence to support Louis Pihakis's claims against James Pihakis. Therefore, the trial court did not err in granting summary judgment in favor of James.
AFFIRMED.
TORBERT, C.J., and JONES, ADAMS and STEAGALL, JJ., concur.