RICHARD L. HOLMES, Retired Appellate Judge.
In November 1992 Adele Bressler filed a complaint against William D. Dudley and Carol B. Dudley. The complaint alleged that the Dudleys had slandered Bressler’s title to her property, located at 8100 Wynlakes Boulevard in Montgomery, Alabama (subject property), when the Dudleys recorded a vendor’s lien against the subject property for $68,000, plus interest from April 8, 1988, at an interest rate of 9.75%.
Bressler requested that the trial court issue an order removing the hen from the subject property and awarding to her compensatory and punitive damages.
The Dudleys filed an answer and a counterclaim, alleging that they had loaned $68,-000 to Bressler for the purchase of the subject property and that a promissory note bearing Bressler’s signature was evidence of this loan. The Dudleys requested that the trial court enter a judgment against Bressler in the amount of $68,000, plus interest from April 8, 1988, at an interest rate of 9.75%.
In her answer to the counterclaim, Bres-sler denied that the Dudleys had loaned any funds to her. Bressler also denied that she had signed the promissory note.
Bressler filed an amended complaint, pursuant to Ala.Code 1975, §§ 35-11-215 and - 218, asserting a claim for an improperly filed hen. The Dudleys filed an answer to the amended complaint, contending that §§ 35-11-215 and -218, were not apphcable to the present case.
The Dudleys filed a summary judgment motion and/or a motion for a judgment on the pleadings. In their motion the Dudleys argued that, based upon the apphcable statute of limitations, they were entitled to a judgment in their favor on Bressler’s slander of title claim. The trial court agreed and orally granted the summary judgment motion on the slander of title claim in favor of the Dudleys.
Thereafter, Bressler filed a motion to amend her complaint to add claims for misrepresentation, fraud, deceit, and suppression of a material fact. The Dudleys filed a motion to strike Bressler’s second amended complaint. The trial court did not allow Bressler to amend her complaint to add the fraud and suppression counts.
The trial court conducted a non-jury trial of this matter. Thereafter, the trial court issued an order, which (1) found the promissory note to be vahd and capable of supporting a hen for $50,000, plus interest at a rate of 9.75% per annum from April 8, 1988; (2) stated that the hen was to be satisfied when the subject property is transferred, by sale or otherwise, if not earlier; (3) entered a *1357 judgment in favor of Bressler on the Dud-leys’ counterclaim for a judgment for the amount of the debt; and (4) entered a judgment in favor of the Dudleys on Bressler’s claims for slander of title and an improperly filed lien.
Bressler filed a motion to alter, amend, or vacate or, in the alternative, a motion for a new trial. The motion was denied.
Bressler appeals. This case is before this court pursuant to Ala.Code 1975, § 12-2-7(6).
Our review of the record reveals the following pertinent facts: The Dudleys are Bressler’s daughter and son-in-law. The present dispute between the parties primarily centers around a transaction which occurred in April 1988. The parties agree that in April 1988, the Dudleys transferred title to their lot in the Bellwood subdivision to Bres-sler and that Bressler immediately transferred title to the Bellwood lot to KirHand Construction Company (Kirkland) and received a $68,000 credit toward Bressler’s purchase of the subject property. Thereafter, Kirkland conveyed the subject property to Bressler. However, the parties disagree concerning the remaining circumstances surrounding the April 1988 transaction.
Bressler’s account of the April 1988 transaction is as follows: Bressler’s husband had always handled the family finances, and when he died in 1986, Bressler began to rely heavily upon her daughter, Carol Dudley, to handle Bressler’s finances. By April 1988 the Dudleys had managed to appropriate over $50,000 of the money in Bressler’s bank account to themselves. Bressler maintains that the Dudleys transferred title of their Bellwood lot to Bressler to compensate Bres-sler for the money which the Dudleys had appropriated to themselves from Bressler’s bank account. We would note that the trial court stated the following in its order: “There was extensive testimony regarding the prior transfer and use of money between Bressler and the Dudleys (and vice versa). However, neither party conclusively demonstrated that the other was indebted to it prior to the April 8,1988, real estate transaction.”
Bressler denies executing the promissory note in April 1988. Additionally, she states that she was unaware that the Dudleys had recorded a “vendor’s lien” against the subject property until she attempted to refinance her mortgage.
The Dudleys’ account of the April 1988 transaction is as follows: Bressler wished to purchase a home in the Wynlakes subdivision. The Dudleys owned a lot in Bellwood, which was worth $68,000. In order to assist Bressler with the financing of this project, the Dudleys agreed to transfer to Bressler their Bellwood lot, and Kirkland was to give Bressler a $68,000 credit toward the purchase of a home in the Wynlakes subdivision. This April 1988 transaction involved the execution of a $50,000 promissory note by Bres-sler.
The Dudleys maintain that when it became apparent that Bressler did not intend to hon- or her promise to repay the loan, the Dud-leys recorded a vendor’s lien against the subject property in the amount of $68,000, plus interest at the rate of 9.75% per annum. The vendor’s Ken was recorded in March 1990.
In her first issue Bressler contends that the trial court committed reversible error when it entered a summary judgment in favor of the Dudleys on Bressler’s slander of title claim. We would note that the trial court’s order states the following, in pertinent part:
“The Ken was filed on March 16,1990, and suit was not filed until November 12,1992. Based on the expiration of the appKcable two (2) year statute of limitations, Ala. Code § 6-2-38(k) 1975, and on the authority of Hosey v. Central Bank of Birmingham, Inc., 528 So.2d 843 (Ala.1988), this court orally granted summary judgment in favor of the [Dudleys] as to the slander of title claim filed by Bressler.”
Bressler argues that, pursuant to Ala.Code 1975, § 6-2-3, the statute of limitations on her slander of title claim should have been toUed until August 1992, when she actuaKy discovered that the Dudleys had filed a Ken against the subject property. Bressler maintains that because the mother-daughter rela *1358 tionship between the parties was a confidential relationship, the Dudleys were guilty of fraudulent concealment when they failed to reveal to Bressler that they had recorded a lien against her property.
The Dudleys maintain that they had no duty to give Bressler actual notice of the filing of their vendor’s lien because, they say, any confidential relationship which might have existed between the parties had deteriorated to the point where it was destroyed prior to the filing of the lien.
As previously noted, Bressler maintains that when the Dudleys transferred their Bellwood lot to her in April 1988, the Dud-leys were not making a loan to Bressler, but were compensating her for the substantial sums which they had appropriated to themselves from Bressler’s bank account, without Bressler’s consent or permission. Consequently, it could not be said that there existed such a “confidential relationship” between the parties that the Dudleys occupied a role which inspired confidence that they were acting in good faith for Bressler’s interest. See Holdbrooks v. Central Bank of Alabama, N.A., 435 So.2d 1250 (Ala.1983).
In light of the above, that portion of the trial court’s judgment which entered a summary judgment in favor of the Dudleys on Bressler’s slander of title claim is affirmed.
In her second issue Bressler contends that the trial court committed reversible error when it determined that Bressler’s signature on the $50,000 promissory note was genuine. Bressler acknowledges that an appellate court will not disturb the trial court’s findings unless the findings are so unsupported by the evidence as to be plainly and palpably erroneous. See Humphries v. Whiteley, 565 So.2d 96 (Ala.1990). Bressler contends that the trial court’s determination is plainly and palpably erroneous because, she says, there was evidence presented which indicated that she did not execute the promissory note.
Our review of the record reveals that while Bressler and two of her four adult children testified that the signature on the promissory note was not Bressler’s, the other two adult children testified that the signature was Bressler’s. George Pearl, the handwriting expert retained by Bressler, testified that it was his opinion that the signature on the note was “non-genuine.” Barton Crum, the attorney who handled the April 1988 transaction, testified that because he has handled approximately 11,000 closings since the April 1988 transaction, he does not have any independent recollection of Bressler’s signing the note. However, Crum also testified that the note was an integral part of the April 1988 transaction and that he would not have closed the transaction if Bressler had not signed the note.
This court stated the following in Bunn v. Bunn, 628 So.2d 695, 697 (Ala.Civ.App.1993):
“An expert’s opinion is not conclusive on the trier of fact, even if the testimony was uncontroverted, because a trial court must look to the entire evidence and its own observations in deciding factual issues. The weight and credibility to be attributed to the testimony of an expert is for the trier of fact. While some of the evidence was disputed, the trial court was in the best position to observe the witnesses and their demeanor, and to adjudge their credibility. In determining the weight to be accorded testimony, the trial court, as sole judge of the credibility of witnesses, considers the demeanor and apparent candor or evasiveness of the witnesses, and the trial court may disbelieve and disregard portions of testimony and should accept only that testimony it considers worthy of belief.”
(Citations omitted.)
In light of the foregoing, we do not find that the trial court committed reversible error when it determined that Bressler’s signature on the $50,000 promissory note was genuine.
In her third issue Bressler contends that the trial court committed reversible error when it found that the promissory note created an underlying obligation on behalf of Bressler and an equitable interest in the subject property in favor of the Dudleys. Bressler argues that the trial court erred when it transformed a purely personal obligation into a lien on the subject property.
*1359 The trial court’s order stated the following, in pertinent part:
“The court finds that the lot was deeded to Bressler as a loan to her and she did execute the promissory note. Therefore, this court holds that the note obligating Bressler to pay [the Dudleys] $50,000 ‘on or before’ her death is valid and evidences a debt owed to the Dudleys as the result of their lending her money with which to purchase [the subject property],
“Moreover, the debt creates an equitable interest in Bressler’s property located in Wynlakes subdivision. See Pihakis v. Pihakis, 496 So.2d 765, 767-768 (Ala.1986).”
While there is evidence to support the trial court’s finding that the note was valid and evidence of a debt owed to the Dudleys, we find that the trial court committed reversible error when it determined that this debt created an equitable interest in the subject property.
The trial court was correct in recognizing that the law in Alabama provides, “[generally, a resulting trust will be presumed in favor of one who provides purchase money for land when title is taken in the name of another.” Mayo v. Gortney, 468 So.2d 147, 149 (Ala.1985). However, our supreme court stated the following in Green v. Eastwood Baptist Church Inc., 496 So.2d 718, 722 (Ala.1986):
“As this court has said, where ‘one person advances the purchase-money of property, by way of a loan, to the vendee, and the conveyance of title is made to the latter, no trust will result in favor of the one who thus advances the money. The very act of a loan contradicts and rebuts the implication of a trust which might otherwise be presumptively raised by law.’ Noland v. Sanders, 273 Ala. 459, 461, 142 So.2d 888, 885 (1962); Whaley v. Whaley, 71 Ala. 159, 162 (1881).”
William Dudley (William) testified that Bres-sler agreed to repay the Dudleys for the Bellwood lot transferred to Bressler for use toward the purchase of the subject property. William further stated that when the April 1988 transaction occurred, he fully expected Bressler to repay $68,000, the amount of credit Kirkland allowed Bressler for the Bell-wood lot, to the Dudleys. Thus, the evidence clearly indicates that the transfer of the Bell-wood lot was a loan.
In light of the above, that portion of the trial court’s order which found that this debt created an equitable interest in the subject property is reversed and the cause is remanded to the trial court for proceedings consistent with this opinion.
In her final issue, Bressler contends that the trial court committed reversible error when it declared that the note would carry “interest at a rate of 9%% per annum from April 8,1988.”
The promissory note stated:
“I agree to pay on or before my death $50,000.00 to [the Dudleys] for the purchase of Lot 27 Bellwood Estates Plat 6, Montgomery County, Alabama.
“Dated this 8th day of April, 1988.
“/s/ Adele D. Bressler”
The trial court correctly determined that the Dudleys were not entitled to a judgment for the amount of the debt because the note, to be paid “on or before” Bressler’s death, was not yet due.
In view of the above, it is not necessary for this court to determine the rate of interest, and it would appear that the trial court’s action in this regard is surplusage. However, we would note that, in the absence of an agreement to the contrary, interest on a debt begins to run when the obligation reaches maturity. See Ala.Code 1975, § 8-8-8; 47 C.J.S. Interest & Usury §§ 45 and 46 (1982). Additionally, we would note that although a person may contract for a higher rate of interest, a maximum rate of 6% will govern in cases where no written contract controls. See Ala.Code 1975, § 8-8-1.
We have reviewed the record and find that the only testimony regarding interest rates came from William, who testified to the following: ‘Yes, we agreed that she would either pay me an interest rate on the money or at the time she sold the property, I would have a percentage of it. Those were the agreements.” We would note that when William was questioned about how he arrived at *1360 the interest rate of 9.75% contained in the vendor’s lien, William stated that his attorney prepared the document and that he did not know how the attorney arrived at the interest rate.
We would note that the promissory note makes no mention of interest. Additionally, William admitted that the note does not specify an interest rate.
This judgment is due to be affirmed in part, reversed in part, and remanded for proceedings consistent with the above.
The foregoing opinion was prepared by Retired Appellate Judge RICHARD L. HOLMES while serving on active duty status as a judge of this court under the provisions of Ala.Code 1975, § 12-18-10(e).
AFFIRMED IN PART; REVERSED IN PART; AND REMANDED WITH INSTRUCTIONS.
THIGPEN, YATES, MONROE, and CRAWLEY, JJ., concur.
ROBERTSON, P.J., concurs in the result.