This is an appeal from a judgment entered by the Clay County Circuit Court imposing a trust in favor of the appellee, Francis Juanita Mayo Gortney (Juanita), on certain property, title to which is held in the name of the appellant, Francis Louise Mayo (Louise).
Juanita is the natural daughter of Louise and James Mayo. Louise and James were married in 1940, divorced in 1960, and remarried in 1980. James died January 5, 1981. At the time of his death, James owned two life insurance policies with a combined coverage of $25,000. Juanita was the sole named beneficiary on both policies. In anticipation of receipt of the insurance proceeds, a joint checking account was opened in the names of Louise and/or Juanita. Afterwards, Juanita received two checks, one for $20,000 and the other for $5,000, which she deposited in the joint account. Shortly thereafter, Louise used funds from the joint account to purchase approximately 30 acres of land. She also used funds from the account to pay the balance owed on a mobile home and to have a well dug.
Subsequent to the purchase of the land, Louise informed Juanita that she had executed a new will and that Juanita would not *Page 149 
receive anything after her death. Louise also indicated that she intended to sell the land. Juanita then filed this lawsuit, seeking the imposition of a resulting trust, or in the alternative a constructive trust, on the property and seeking any other relief that might be proper. The trial court, sitting without a jury, heard the evidence and imposed a trust on the property, the mobile home, and the well. Louise appeals.
Generally, a resulting trust will be presumed in favor of one who provides purchase money for land when title is taken in the name of another. Strother v. Strother, 436 So.2d 847 (Ala. 1983);Hooks v. Hooks, 258 Ala. 427, 63 So.2d 348 (1953). This rule does not require that the person furnishing the purchase money actually pay the money to the grantor; rather, it is sufficient if the payor furnishes the grantee the money, at or before the time of the conveyance, and the grantee then pays the purchase price. Adams v. Griffin, 253 Ala. 371, 45 So.2d 22
(1950); Young v. Greer, 250 Ala. 641, 35 So.2d 619 (1948). However, a resulting trust will not be presumed when title is taken in the name of another without the consent of the payor.Haavik v. Farnell, 264 Ala. 326, 87 So.2d 629 (1956).
This Court has held that the presumption of a resulting trust is rebutted where a husband or parent pays the purchase price for land and title is taken in the name of the wife or child. In such instances, the stronger, counter presumption of an intention to make a gift to the wife or child rebuts the presumption of trust.[1] Sykes v. Sykes, 262 Ala. 277,78 So.2d 273 (1955). The presumption of trust is not rebutted however, where as here, the child provides the purchase money and the parent takes title to the property. 76 Am.Jur.2d Trusts § 208, p. 438-39 (1975); 5 A. Scott, The Law of Trusts § 442, p. 3333, 3337-39 (3d ed. 1967); Restatement (Second) of Trusts § 442, p. 402, 403 (1959); 89 U.S. Trusts § 129, p. 991-92 (1955). The reason for the distinction is found in G. Bogert, The Law ofTrusts and Trustees § 460, p. 720, 739-41 (rev. 2d ed. 1977):
 "Where a child pays for property and vests title in a parent, the courts have presumed a trust for the child and not a gift to the parent. There is an absence of a duty to support the parent, except as statutes may have changed the law where the parent is unable to care for himself. Children normally live longer than their parents and hence do not usually give their property to parents in anticipation of death. While the courts doubtless recognize the existence of a strong feeling of loyalty and affection between the normal child and his parents, they apparently do not feel that this element alone is sufficient to make the primary inference that of gift. That the children are vesting title in their parents for the purpose of securing the assistance of the parents in managing the property for the children seems to be the generally accepted theory."
It is undisputed that the proceeds from the life insurance policies, used by Louise to purchase the property, were deposited in the joint account prior to the time of the conveyance. Furthermore, there is no question that the purchase money was furnished by Juanita. Juanita was the sole named beneficiary on both policies, and Louise, through her own testimony, admitted that she knew the money belonged to Juanita:
 "Q. Oh, I see, you knew that it was her [Juanita's] money, coming to her?
"A. That's the way they told it.
 "Q. In other words, they said it was coming to her, didn't they?
"A. That's the way they told it.
". . . *Page 150 
 "Q. So, you knew she was going to get the twenty-five thousand dollars in checks; is that right?
"A. Yeah.
". . .
 "Q. I see; but it was her money, that twenty-five thousand that was in there was the money that bought the land; wasn't that right?
"A. That's right."
Thus, the only question that remains is whether Louise had Juanita's consent to use the money in the joint account to purchase the property. Juanita testified that prior to receipt of the insurance proceeds, she and her mother reached an agreement: Juanita would deposit the proceeds in the joint account and her mother would then use the money to purchase the property, with the understanding that Juanita would receive the property upon her mother's death. Louise denied that she ever told her daughter to deposit the proceeds in the joint account or that she made any agreement concerning future disposition of the property. However, despite her denials, on cross examination Louise testified to the following:
 "Q. Did you ever make a statement or is it true that you made a statement, in front of Perry Young and Melba Young, that if your daughter would let you have that money to buy the land that she would get it back anyway, when you died?
 "A. I said that if anything happened to me everything would be [Juanita's] in the will of '80.
 "Q. Oh, did you say the `Will of `80' at the time or did you say everything would be her's?
"A. Well, this was the first part of '81.
 "Q. That's what you meant; in other words, when you made these statements, about the time that she gave you the money or put the money into the account, you had made these statements several times before that, hadn't you?
 "A. That was before she had ever put any money in the bank.
". . .
 "Q. Well, didn't you say, `If she does, that she will get it all back, when she got the land back anyway; is that what you said?
 "A. I didn't tell her at one time or another to put the money in the bank.
 "Q. Did you not make that statement in front of Perry?
 "A. I said, `If anything happened to me, everything would go to her' at that time.
"Q. I see; so, did you tell [Juanita] that?
"A. Yes, she knows that.
 "Q. You said that, did you tell it in front of Perry?
 "A. I don't remember if Perry was in front of her or not, but I have said it in front of Perry, yes.
 "Q. And you have said it in front of his wife, Melba, haven't you?
"A. Yes.
"Q. You have said that, isn't that right?
"A. And it would have."
The testimony at trial was presented ore tenus, and where evidence has been presented orally a presumption of correctness attends the trial court's conclusions on issues of fact, which will not be disturbed on appeal unless they are palpably wrong or clearly erroneous. Ross v. Luton, 456 So.2d 249 (Ala. 1984);First Alabama Bank of Montgomery, N.A. v. Martin, 425 So.2d 415
(Ala. 1982). Clearly, there was sufficient evidence to support the trial court's finding that the insurance proceeds were deposited in the joint account so that Louise could use the funds to purchase the property and that there was an understanding that after Louise died Juanita would receive the property. Thereafter, in the absence of evidence to the contrary, a presumption arose, by operation of law, in favor of Juanita as the person providing the consideration and that presumption was sufficient to invoke the equitable device of a resulting trust. See, Cone v. Cone, 331 So.2d 656. (Ala. 1976). *Page 151 
The record fails to show any evidence that would rebut the presumption of a resulting trust; therefore, the judgment of the trial court is affirmed. Because the evidence supports the imposition of a resulting trust, we decline to address the issue of whether the evidence would support the imposition of a constructive trust.
AFFIRMED.
FAULKNER, ALMON, EMBRY and ADAMS, JJ., concur.
[1] The rule presuming a trust when the wife is payor and the husband is grantee, but presuming a gift when the husband is payor and the wife is grantee, has come under fire as anachronistic and unfair, see generally Comment, Husband'sAcquisition of Title with Funds Furnished by Wife: ResultingTrust or Presumption of Gift, 74 Dick.L.Rev. 455 (1970); however, those arguments do not apply to the parent-child relationship, which is at issue here.