Sarah Scholl, a cotrustee of the family trust created in the will of Maxine Krout Murphy, deceased, appeals the trial court's judgment interpreting the language of Murphy's will regarding the creation and the order of the funding of the spousal and family trusts and ordering that the spousal trust be funded first. We reverse the judgment and remand.
 Facts and Procedural Background
Maxine Krout Murphy died on December 23, 2001. Her will, executed on September 16, 1996, was admitted to probate on January 29, 2002. Pursuant to a provision in the will, M.C. Murphy, Murphy's surviving spouse, was issued letters testamentary as executor of Murphy's estate. Approximately a year and a half later, M.C. Murphy removed the administration of Murphy's estate to the circuit court.
M.C. Murphy petitioned the circuit court for an interpretation and declaration of the legal effect of items three and four of Murphy's will with regard to the creation and funding of the two trusts created in her will — a spousal trust and a family trust. Items three and four read, in pertinent part:
 "ITEM THREE
 "B. . . .
 "If my spouse survives me, all the rest, residue, and remainder of the property which I may own at the time of my death, real, personal, and mixed, tangible and intangible, of whatever nature and wheresoever situated, . . . I give to the Trustee, hereinafter designated, as a general legacy, to be held, as of the date of my death, in a separate trust named for my spouse that pecuniary amount which is equal to the value as finally determined for federal estate tax purposes of `qualified property' (as defined in this paragraph) reduced by the largest amount, if any, which, if allocated to the Family Trust . . ., would result in no increase in federal estate tax payable at my death by reason of taking in[to] account the unified credit and the credit for state death taxes . . . allowable to my estate, but no other credits. As used in this paragraph, `qualified property' is all property disposed of by this will and property, the proceeds, investments, or reinvestments of which are disposed of by this will, in either case which is included in my gross estate for federal estate tax purposes and which is *Page 1118 
not otherwise effectively disposed of by (i) ITEM TWO of this will, or (ii) the payment of debts, expenses of administrations, and other charges payable from principal by my executors, including the death taxes. The Trust named for my spouse shall be administered as follows:
 "1. Commencing as of the date of my death and during the life of my spouse the trustee shall distribute to my spouse:
 "(a) The entire net income of the trust in convenient installments, at least as frequently as quarterly;
 "(b) As much or all of the principal of the trust as the trustee from time to time determines to be required for the health and support in reasonable comfort of my spouse, considering all circumstances and factors deemed pertinent by the trustee; and
 "(c) As much of all of the principal of the trust as my spouse from time to time may direct in writing.
 "ITEM FOUR
 "I give to the trustee or co-trustees designated in ITEM ELEVEN of this will, to be held as a separate trust named the Family Trust, all my residuary estate, which shall not include any property over which I have power of appointment. The Family Trust shall be administered as provided in ITEM SIX[1] of this will.
 "A. I recognize that under some circumstances no property may be allocated to the Family Trust pursuant to the formula set forth in paragraph B of ITEM THREE.
 "B. For the purposes of determining the pecuniary amount to be allocated to the Family Trust, I direct that:
 "1. Adjustments shall not be made between . . . income and principal or in determining the pecuniary amount to compensate for the effect of certain tax elections made by my executor or the Trustee;
 "2. None of the provisions of ITEM THREE, including for example the use of the term `largest,' shall be construed as requiring any particular exercise or non-exercise of tax elections, regardless of their affect on the determination of the pecuniary amount; and
 "3. The pecuniary amount shall be determined assuming a federal estate tax marital deduction is allowed for property allocated to my spouse, and shall be increased if and to the extent required by subparagraph B of paragraph 4 of this ITEM.
 "4. For purposes of funding the Family Trust:
 "A. Property allocated in kind shall be valued at its fair market value as of the date of its allocation to the Family Trust; and
 "B. All property or proceeds of property with respect to which the federal estate tax marital deduction would not be allowable, if distributed outright to my spouse, shall be allocated to the Family Trust."
M.C. Murphy, in his request for a declaratory judgment, argued that the language in items three and four required that the spousal trust be funded before the family trust. Scholl, as cotrustee of the family trust, answered, asserting that the language required that the family trust be *Page 1119 
funded first, so as to exhaust Murphy's unified tax credit, then any additional funds were to be placed in the spousal trust to avoid estate taxes by taking advantage of the marital deduction.
At trial, M.C. Murphy argued that the language establishing the spousal trust and the family trust created a latent ambiguity regarding the order in which the trusts were to be funded. According to M.C. Murphy, this latent ambiguity authorized the trial court to admit extraneous evidence of Murphy's intent. The trial court agreed and permitted M.C. Murphy to admit evidence from the attorney who drafted the will and himself, stating in essence that Murphy's intent was to fund the spousal trust before funding the family trust.
Scholl presented evidence from Cynthia G. Lamar-Hart, an attorney specializing in estate planning, estate and trust administration, and estate and trust litigation. She testified that the language in items three and four was unambiguous, stating:
 "My opinion is that the will is a typical two trust will that includes the unified credit or family trust [and] a marital trust. The funding clause, as I read it, directs that the largest amount possible without increasing estate tax be funded to the family trust, such that . . . [Murphy's] entire unified credit would be used in funding the family trust.
 ". . . .
 "In my opinion, the funding clause that's relevant is the second paragraph under item three B. . . . And . . . [this] language is the operative language: `[R]educed by the largest amount, if any, which, if allocated to the Family Trust created in ITEM FOUR of this will, would result in no increase in federal estate tax payable at my death for reason of taking in[to] account the unified credit and the credit for state death taxes.'
 "In my opinion what that means is that the intent of the testator, as expressed in this document, is to use her unified credit so as to protect the husband's estate from inclusion of that amount in his estate at his death.
 "This is advantageous to the entire estate because it allows the first spouse to die to use his or her credit to protect property from estate tax, allowing the second spouse to use his or her estate tax credit or unified credit at . . . death[, t]hereby doubling the amount of property that is excluded from the estate tax.
 ". . . .
 "The correct interpretation of this will is to use the unified credit by funding the family trust first. That's the only way to give any meaning whatsoever to the language that the testatrix has used: `[R]educ[ing] by the largest amount, if any, which, [if] allocated to the Family Trust . . ., would result in no increase in federal estate tax payable'. . . .
 "My opinion is that the will simultaneously creates the two trust[s] and then directs funding first of the family trust to use the unified credit. If Mrs. Murphy had not had sufficient unified credit to soak up her entire estate, then the remaining estate would have been put in the marital trust.
 "And I'd like to clarify that, . . . if the estate is left to the [surviving] spouse, there's never any tax consequence at the first death. What you're doing is protecting the estate at the second death.
 ". . . .
 ". . . [W]hat this will directs, and what the only sensible reading of the will is, [is] `use my unified credit and protect the second spouse at his death from estate tax inclusion with the maximum amount possible that can go into the *Page 1120 
family trust without creating any estate tax.' And the maximum amount possible here was the entire residuary estate."
The trial court held that the language directing the funding of the spousal and the family trusts was ambiguous. After considering extrinsic evidence of Murphy's intent with regard to creating and funding these trusts, the trial court held that Murphy intended to fund the spousal trust first. Scholl appeals. After Scholl filed her notice of appeal, M.C. Murphy died. Bernice K. Stacy, Murphy's sister, was issued letters testamentary to replace M.C. Murphy as executor of Murphy's estate.
 Standard of Review
In Kershaw v. Kershaw, 848 So.2d 942, 951 (Ala. 2002), this Court held that a determination whether a document is ambiguous is a question of law. Questions of law are reviewed de novo. BT Sec. Corp. v. W.R. Huff Asset Mgmt. Co.,891 So.2d 310, 313 (Ala. 2004).
 Discussion
Scholl contends that the trial court erred in holding that the provisions in Murphy's will directing the funding of the spousal trust and the family trust were ambiguous. According to Scholl, the language of the will clearly instructed that the family trust was to be funded with as much of the residuary of Murphy's estate as permitted by her unified-credit allowance and that any funds left over after the unified credit had been exhausted were to be placed in a spousal trust.
 "The law in Alabama regarding the interpretation of wills is well settled:
 "`[T]he intention of the testatrix is the law of the will, which the court should consider as a whole, giving effect to each provision where it is possible to do so; it is the court's duty to carry out the testatrix's intention where that intent can be ascertained. To determine the intent of a testator or testatrix, the court must look to the four corners of the instrument, and if the language is unambiguous and clearly expresses the testator's or testatrix's intent, then that language must govern. Galin v. Johnson, 457 So.2d 359 (Ala. 1984). Where a will contains ambiguous or doubtful expressions, it is the duty of the court to determine what the testator or testatrix intended. Brittain v. Ingram, 282 Ala. 158, 209 So.2d 653 (1968)'"
Barnett v. Estate of Anderson, 966 So.2d 915, 918
(Ala. 2007). "A document is unambiguous if only one reasonable meaning emerges." Kershaw v. Kershaw,848 So.2d at 951.
A plain reading of item three, paragraph B, and item four establishes that Murphy intended to create a spousal trust and a family trust in which to deposit so much of her estate as was not disposed of by specific bequests. A spousal trust allows a decedent to take advantage of the estate-tax marital deduction. The Internal Revenue Code, at 26 U.S.C. § 2056(a), provides a marital deduction for every married decedent in the amount of "the value of any interest in property which passes or has passed from the decedent to his [or her] surviving spouse." Thus, the property transferred to the surviving spouse by use of the marital deduction becomes a part of the surviving spouse's estate; the decedent spouse's estate is not taxed; and the property is taxed at the death of the surviving spouse. This marital deduction has no monetary limitation.26 U.S.C. § 2056.
In addition to the marital deduction, an estate is also eligible for a "unified credit," which is a credit against estate tax each *Page 1121 
decedent is permitted with respect to all testamentary transfers and post-1976 inter vivos gifts to persons other than a surviving spouse. 26 U.S.C. § 2010. The parties agree that Murphy was permitted a unified credit at the time of her death of $675,000. See Taxpayer Relief Act of 1997, Pub.L. No. 105-34 § 501, 111 Stat. 788, 845 (1997).
A plain reading of the language in paragraph B of item three of Murphy's will establishes that Murphy intended to create a spousal trust, allowing her estate to qualify for the marital deduction. Indeed, the parties agree that the spousal trust created in paragraph B of item three of Murphy's will was drafted to satisfy the requirements of the Internal Revenue Code providing for the marital deduction.
Likewise, a plain reading of the language creating the spousal trust establishes Murphy's intent to take advantage of the unified credit, which requires that the family trust be funded before the spousal trust. In creating the spousal trust, the will specifically orders the trustee to hold
 "in a separate trust named for my spouse that pecuniary amount which is equal to the value as finally determined for federal tax purposes of `qualified property' (as defined in this paragraph)[2] reduced by the largest amount, if any, which, if allocated to the Family Trust (created in ITEM FOUR of this will), would result in no increase in federal estate tax payable at my death by reason of taking in[to] account the unified credit and the credit for state death taxes . . . allowable to my estate, but no other credits."
We agree with Scholl, who reasons in her brief to this Court:
 "The only reasonable meaning of the above-quoted funding instruction is that the trustees were to hold in the spousal trust an amount derived by calculating the total amount of [Murphy's] property left after specific bequests and payment of debts and reducing it by (i.e., subtracting from it) so much of [Murphy's] property as could go into the family trust, a trust designed to use her remaining unified credit [and a trust as to which M.C. Murphy was the lifetime beneficiary], and holding everything left over in the spousal trust, which would qualify for the marital deduction. Thus, the family trust would be funded with so much of [Murphy's] property as would use her unified credit. No other interpretation is reasonable."
Indeed, to hold that the spousal trust must be funded first, in light of the unlimited amount allowable for the marital deduction, would defeat the purpose and benefit of creating a family trust and give item four no effect. However, a reading of paragraph B of item three in conjunction with item four clearly establishes Murphy's intent to create both a spousal trust and a family trust, to fund the family trust to the maximum allowed by her unified credit, and then to fund the spousal trust with any remaining funds.
The language in Murphy's will is unambiguous; it clearly expresses her intent to fund the family trust first to take advantage of her unified credit and then to fund the spousal trust with any residuary after the amount of her unified credit is exhausted. Therefore, the trial court erred in holding that the spousal trust was to be funded before the family trust.
Because our decision on this issue is dispositive, we pretermit discussion of other issues presented by Scholl. *Page 1122 
 Conclusion
The language of Murphy's will unambiguously provided that the family trust was to be funded before the spousal trust. Based on the foregoing, we reverse the trial court's judgment and remand this cause for proceedings consistent with this opinion.
REVERSED AND REMANDED.
COBB, C.J., and LYONS, BOLIN, and MURDOCK, JJ., concur.
[1] Item six provides for the distribution of the family trust, stating that the funds in the family trust are to be distributed to M.C. Murphy for his lifetime as required for his health and support in reasonable comfort, then at his death are to be distributed to Murphy's nieces and nephews.
[2] Murphy's will defined "qualified property" as all of Murphy's property after specific be-quests were made and debts of the estate were paid.