THOMAS, Judge.
Steven Jeffery Smith and Cyndi Irene Cooke appeal from the portions of a judgment entered by the Conecuh Circuit Court (“the trial court”) in favor of Elizabeth Smith. Elizabeth cross-appeals from the trial court’s judgment.

I. Facts and Procedural History

The parties are the heirs of Billy Ernest Smith. Elizabeth married Billy on November 6, 1996; there were no children born of the marriage. Steven and Cyndi are Billy’s adult children from a previous marriage. The record shows that Billy and Elizabeth met while horseback riding and that Billy made a living training horses for other people. Billy and Elizabeth lived on property owned by Billy. Also located on Billy’s property was a barn and adjoining horse pens and pastureland on which Billy and Elizabeth kept their own horses.
Billy died in April 2009. His will (“the will”), among other things, named Steven as the executor of his estate (“the estate”). In paragraph two of the will, Billy devised “my dwelling house and the one acre of land on which same is situated to [Elizabeth], for and during the term of her natural life or until she remarries and/or moves away from said property.” Paragraph three of the will bequeathed to Elizabeth “her pick of all my horses, together *809 with the tack for same,” and “our family car and all cash and bank accounts owned by me.” Finally, paragraph four of the will provided that Steven and Cyndi would receive the “rest and residue of my property, real, personal, and mixed.”
On May 25, 2010, Elizabeth filed a complaint in the trial court against Steven as the executor of the estate and against Steven and Cyndi individually. In her complaint, Elizabeth asserted, among other things, that Steven had prevented her from using the barn and horse pens. Elizabeth requested, in pertinent part, that the trial court enter a declaratory judgment interpreting the provisions of the will and determining the ownership of certain personal property; that the trial court issue a restraining order against Steven enjoining him from harassing her and from removing any assets of the estate; and that the trial court award her a resulting trust in 55 acres of real property (“the 55 acres”) that Billy had purchased during the marriage. The trial court entered a temporary restraining order (“TRO”) on May 27, 2010, enjoining Steven from any contact with Elizabeth and from removing any assets or moneys of the estate.
On June 10, 2010, Steven and Cyndi filed a motion to dismiss, in which they argued that the probate of the will was still pending in the Conecuh Probate Court (“the probate court”) and, therefore, that the trial court lacked jurisdiction over the administration of the estate. The trial court held a hearing that same day, after which it entered an order granting a preliminary injunction enjoining all parties from having contact with one another and ordering Elizabeth to file a motion to remove the probate of the estate from the probate court to the trial court. Steven and Cyndi filed an answer to the complaint on June 15, 2010. Elizabeth filed a motion to consolidate the estate-administration action that had been removed to the trial court with the action she had filed in the trial court; the trial court granted the motion for consolidation on June 24, 2010.
On January 12, 2011, Steven and Cyndi filed a counterclaim alleging actual and constructive conversion in which they asserted that Elizabeth had continued to use real and personal property that was not awarded to her in the will, such as the barn, the horse pens, Billy’s Dodge truck (“the Dodge truck”), and a four-horse trailer. After a continuance, a trial was held on July 16, 2012, at which the trial court heard evidence ore tenus. The trial court entered a judgment on October 4, 2012. The trial court’s judgment, in pertinent part, incorporated the parties’ agreement that Elizabeth would pick three of Billy’s horses as her own, concluded that the one acre devised to Elizabeth as a life estate included the barn and the horse pens, and awarded Elizabeth use of the Dodge truck and the horse trailer and “saddles and all items usually described as ‘tack’ by [Billy] and/or the parties.” The trial court also granted Elizabeth’s claims for a family allowance, a homestead allowance, and exempt property pursuant to §§ 48-8-110 through 43-8-112, Ala.Code 1975. However, the trial court’s judgment denied Elizabeth’s request for a resulting trust in the 55 acres and awarded the 55 acres to Steven and Cyndi pursuant to the residuary clause in the will. The trial court also denied Steven and Cyndi’s counterclaims.
Steven and Cyndi filed a motion to alter, amend, or vacate or for a new trial on October 25, 2012. On October 26, 2012, Elizabeth filed a motion for enforcement and to show cause, in which she alleged that Steven and Cyndi had failed to comply with the trial court’s judgment. Steven and Cyndi filed a motion to stay the execution of the judgment pending the resolution of their postjudgment motion on November 13, 2012; the trial court denied *810 the motion to stay on the same day. Elizabeth filed a motion for contempt on November 28, 2012; she filed an amended motion for contempt on February 1, 2013. On February 15, 2013, Steven and Cyndi filed a motion for approval of a supersede-as bond. The trial court entered two orders on February 21, 2013; one granted Steven and Cyndi’s motion for a superse-deas bond and the other dismissed Elizabeth’s motion for contempt for failure to comply with Rule 70A(e)(l) and (2), Ala. R. Civ. P. Steven and Cyndi filed a notice of appeal with our supreme court on March 4, 2013.[1] Elizabeth filed a notice of cross-appeal with our supreme court on March 19, 2013. The appeal and the cross-appeal were transferred to this court pursuant to § 12-2-7(6), Ala.Code 1975.

II.Standard of Review

“When the resolution of an appeal turns on the construction of a will, we apply a de novo standard of review. See Harrison v. Morrow, 977 So.2d 457, 459 (Ala.2007).
“ ‘The law in Alabama regarding the interpretation of wills is well settled:
“ ‘ “ ‘[T]he intention of the [testator] is the law of the will, which the court should consider as a whole, giving effect to each provision where it is possible to do so; it is the court’s duty to carry out the [testator]’s intention where that intent can be ascertained. To determine the intent of a testator or testatrix, the court must look to the four corners of the instrument, and if the language is unambiguous and clearly expresses the testator’s or testatrix’s intent, then that language must govern. Galin v. Johnson, 457 So.2d 359 (Ala.1984). Where a will contains ambiguous or doubtful expressions, it is the duty of the court to determine what the testator or testatrix intended. Brittain v. Ingram,, 282 Ala. 158, 209 So.2d 653 (1968).’ ”
“ ‘Barnett v. Estate of Anderson, 966 So.2d 915, 918 (Ala.2007). “A document is unambiguous if only .one reasonable meaning emerges.” Kershaw v. Kershaw, 848 So.2d [942] at 951 [ (Ala.2002) ].’
“Scholl v. Stacy, 981 So.2d 1116, 1120 (Ala.2007).”
McKnight v. Way, 58 So.3d 810, 815 (Ala.Civ.App.2010).

III.Issues

In their brief on appeal, Steven and Cyndi argue that the trial court disregarded the plain language of the will by awarding Elizabeth a life estate in the property underlying the horse pens; that the trial court erred by drawing the boundaries of the one acre devised to Elizabeth as a life estate to include the barn; that the trial court misconstrued Billy’s intent by awarding Elizabeth the tractor and its implements, the Dodge truck and the horse trailer, and Billy’s tools of his trade; and that the trial court erred by awarding Elizabeth all the remaining personal property to satisfy her family allowance and personal exemptions. In her cross-appeal, Elizabeth argues that the trial court erred by failing to impose a resulting trust on the 55 acres.

IV.The House and the One Acre

Taking the issues out of turn, we first address whether the trial court erred by construing the boundaries of the one acre that Billy left to Elizabeth along with the house to include the barn. The second paragraph of the will states:
*811 “I will and devise my dwelling house and the one acre of land on which same is situated to my beloved wife, Elizabeth Ann Smith, for and during the term of her natural life or until she remarries and/or moves away from said property.”
According to Steven and Cyndi, the absence of any reference to the barn in the above paragraph indicates that Billy did not intend for the one acre to include the barn. They correctly cite the legal principle that
“[n]o presumptions or rules of construction can serve to rewrite a will at variance with its clear and unambiguous terms, whatever extraneous fact may have led the testator to make the will he did make. The sanctity of wills, safeguarded by law, would be weakened, if not destroyed, by thus disregarding the plain terms of the will. City Bank & Trust Co. v. McCaa et al., 213 Ala. 579, 105 So. 669 [ (1925) ]; Meglemry et al. v. Meglemry, 222 Ala. 229, 131 So. 906 [ (1931) ]; Spencer v. Title Guarantee Loan & Trust Co. et al., 222 Ala. 485, 132 So. 730; 69 C.J. § 1110, § 1148, Notes 98 and 99 [ (1931) ].”
Baker v. Hendricks, 240 Ala. 630, 632, 200 So. 615, 617 (1941).
We agree that it is not within the purview of a court to rewrite unambiguous terms of a will. However, in the present case, the language of the above paragraph from the will simply states “one acre of land.” Given that the will did not include a metes and bounds, or any other, description of the one acre, we must determine whether the trial court acted within its discretion by fashioning the acre to include the barn within its boundaries.
Steven and Cyndi argue that it is clear from the will that Billy intended for the one acre to be shaped as a square and that the trial court misconstrued Billy’s intent when it fashioned an odd-shaped parcel so that boundaries of the one acre would in-elude the barn. They cite Daniels v. Williams, 177 Ala. 140,144, 58 So. 419, 421 (1912), for the principle that “[a] conveyance of a definite quantity of land in or off of a specified corner of a designated tract is[,] under a well-settled rule of construction, the grant of a corner quadrangle, of equal sides, extending to that corner.” In Daniels, a dispute arose between adjacent property owners regarding whether one owner’s deed accurately described that owner’s property boundaries. 177 Ala. at 142, 58 So. at 420. The deed in question contained the following description: “9 acres in S.W. corner of S.E. 1/4 of S.W. 1/4 of section 1, Tp. 8 north, R. 4 west, the same nine acres described in my deed.” 177 Ala. at 143, 58 So. at 420. Applying the above rule of construction, our supreme court determined that the conveyance dictated a square parcel. 177 Ala. at 144, 58 So. at 421.
Steven and Cyndi’s reliance on Daniels is misguided. The rule of construction cited in Daniels is not applicable to the present action because there was no evidence introduced at the trial that the will provided a starting point for the determination of the boundary of the one-acre parcel. In its judgment, in which it construed the boundaries of the one acre to include the barn, the trial court stated
“that the house and the barn can be included in a legal description for one acre parameter and the barn is hereby determined to be within the one acre parameter described in the Last Will and Testament of Billy Ernest Smith and [Elizabeth] is entitled to a life estate as provided in the Last Will and Testament of Billy Ernest Smith.”
As stated above, the will did not include a description of the one acre or any other type of instruction for drawing the boundaries of the one acre. On the other hand, the trial court heard ample evidence indi- *812 eating that Billy would have intended for Elizabeth to retain use of the barn for the horses and tack that she was bequeathed in the will. Based on the foregoing, we cannot conclude that the trial court erred to revei'sal by establishing the boundaries of the one acre of Elizabeth’s life estate to include the barn.

V The Horse Pens

We next address the argument that the trial court disregarded the plain language of the will by including the horse pens as “appurtenances” to the house and one acre devised to Elizabeth in the will. The trial court stated in its judgment that
“as stated above [Elizabeth’s] house as devised in the Last Will and Testament includes the barn that is adjacent to and appurtenant to the house. The ‘dwelling house’ as devised in the Last Will and Testament of Billy Ernest Smith shall also include the horse pens where [Elizabeth] is currently keeping her horses. This order is made to further comply with the intentions of [Billy] in that [Billy] devised [Elizabeth] horses and intended for her to have a place to maintain and keep them.”
In the section above, we determined that, because the will did not describe the boundaries of the one acre devised to Elizabeth, the trial court did not err by establishing boundaries that included the barn, even though this resulted in an odd-shaped parcel, based upon parol evidence indicating that Billy had intended for Elizabeth to have use of the barn. We cannot, however, reach the same conclusion regarding the horse pens.
In DeMouy v. Jepson, 255 Ala. 337, 341, 51 So.2d 506, 510 (1951), our supreme court concluded that a devise of “my home” included the curtilage of the property. However, DeMouy is distinguishable from the case at bar. The DeMouy court found the devise of “my home” to be “manifestly ambiguous as to exactly what area of land was intended to go with it,” 255 Ala. at 341, 51 So.2d at 510, and, therefore, parol evidence was necessary to determine the testator’s intent.
In the present case, however, Billy specifically devised Elizabeth his dwelling house and the one acre on which it sat. Although we have determined that the trial court acted within its discretion in fashioning the boundaries of the one acre, we cannot conclude that the trial court did not exceed its discretion by awarding Elizabeth more property than devised in the will. “ “When the language of a will is clear and unambiguous, the rules of construction cannot be employed to rewrite that will and put it at variance with the meaning of the language used by the testator.’ Windham v. Henderson, 658 So.2d 431, 434 (Ala.1995).” Harrison v. Morrow, 977 So.2d 457, 459 (Ala.2007). Therefore, we must reverse that portion of the trial court’s judgment that awarded Elizabeth the horse pens, because they lie outside the one-acre parcel awarded to her in the will.

VI. Personal Property

Steven and Cyndi next argue that the trial court erred when it awarded Elizabeth various items of Billy’s personal property. At trial, Elizabeth introduced as an exhibit itemized lists of the personal property remaining in the house, the barn, and the surrounding property. The lists denoted the personal property owned by her, by Billy, and by them both jointly. (The parties refer to this list as “Exhibit 11,” as will we hereinafter.) The trial court incorporated Exhibit 11 into its final judgment.
Our supreme court explained in Whited v. Holmes, 816 So.2d 20, 23-24 (Ala.2001), that caselaw and statutes concerning property division in divorce proceedings “do not govern the distribution of property in an estate.” In their briefs on appeal, the *813 parties cite cases for general propositions of law or cases that are simply not applicable to this appeal. Although it is not our responsibility to perform a party’s research, our own research has indicated a dearth of caselaw directly on point regarding the distribution of personal property in an estate.

A. The Dodge Truck

The undisputed testimony at trial revealed that Billy and Elizabeth owned three vehicles at the time of Billy’s death: the Dodge truck titled solely in Billy’s name, a Ford F150 truck (“the Ford truck”) titled solely in Elizabeth’s name, and an Oldsmobile Cutlass automobile (“the Oldsmobile”). The parties agree that the Oldsmobile was considered by Billy and Elizabeth to be “the family car.”[2] However, testimony at the trial revealed that the Oldsmobile was sold after Billy’s death and that the proceeds of the sale were used to pay the costs to probate the will. In its judgment, the trial court found that
“[a]n additional provision was made in [the] will by Billy Ernest Smith for [Elizabeth] to receive and get ‘our family car.’ The Testator clearly intended for [Elizabeth] to receive an automobile from his estate and the Dodge Truck is the only vehicle in his estate after the sale by [Steven] of the [Oldsmobile].”
Elizabeth argues in her brief that Billy clearly intended for her to receive a vehicle from his estate and that, because the Oldsmobile was sold to pay the probate costs, the Dodge truck is the only remaining vehicle in the estate to satisfy this bequest. We agree with Elizabeth that the Ford truck, which was titled only in her name, did not become part of the estate.
“Section 43-8-76 of the Code of Alabama mandates that unless the testator indicates otherwise, the assets of the estate are to be charged with the payment of estate debts, or abated, in the following order: 1) property not disposed of by the will; 2) residuary devises; 3) general devises; and 4) specific devises. Within each classification, abatement is to be in proportion to the value of the property each of the beneficiaries would have received had full distribution of the estate in accordance with the will been possible.
“Particularly pertinent to this case is subsection (c) of § 43-8-76, Ala.Code (1975), which provides as follows:
“ ‘If the subject of a preferred devise is sold or used incident to administration, abatement shall be achieved by appropriate adjustments in, or contribution from, other interests in the remaining assets.’ ”
Stone v. Curry, 512 So.2d 66, 68 (Ala.1987).
“ ‘The Alabama Legislature has established that “[t]he intention of a testator as expressed in his will controls the legal effect of his dispositions.” § 43-8-222, Ala.Code 1975. “In Alabama the law is well settled that ‘the intention of the testator is always the polestar in the construction of wills, and that the cardinal rule is to give that intention effect if it is not prohibited by law.’ ” Hansel v. Head, 706 So.2d 1142, 1144 (Ala.1997), quoting deGraaf v. Owen, 598 So.2d 892, 895 (Ala.1992).’ ”
Beasley v. Wells, 55 So.3d 1179, 1184 (Ala.2010) (quoting Cottingham, v. McKee, 821 So.2d 169,171-72 (Ala.2001)).
It is clear from the will that Billy intended for Elizabeth to receive a vehicle *814 from the estate. It is undisputed that the Oldsmobile was sold after Billy’s death and that the proceeds from that sale were used to pay the costs of probating the will. After the sale of the Oldsmobile, the Dodge truck was the only remaining vehicle in the estate. Therefore, based on the doctrine of abatement, we affirm the portion of the trial court’s judgment awarding Elizabeth the Dodge truck.

B. The Four-Horse Trailer

In its judgment, the trial court awarded Elizabeth the “four-horse trailer ... and all items usually described as ‘tack’ by [Billy] and/or the parties.” We conclude that the portion of the trial court’s judgment awarding Elizabeth the four-horse trailer must be reversed. Evidence presented at trial showed that the four-horse trailer was titled in Billy’s name only; therefore, it became part of his estate at his death.
Furthermore, we disagree that the four-horse trailer may be properly described as “tack” and, thus, awarded to Elizabeth pursuant to paragraph three of the will. “ ‘The rule, of course, is that the intention of the testator governs the construction of a will, but if by its terms it is unambiguous there is no room for construction and it will be taken as written.’ ” Beasley, 55 So.3d at 1185 (quoting Fuller v. Nazal, 259 Ala. 598, 603, 67 So.2d 806, 810 (1953)). “ ‘[W]ords employed in a will are to be taken in their primary or ordinary sense and use, unless a different meaning is indicated by the context and circumstances of the case....’” Harrison v. Morrow, 977 So.2d at 459-60 (quoting Wiley v. Murphree, 228 Ala. 64, 68,151 So. 869, 872 (1933)). Merriam-Webster’s Collegiate Dictionary defines tack as “stable gear” and “articles of harness (as saddle and bridle) for use on a saddle horse.” Merriam-Webster’s Collegiate Dictionary 1271 (11th ed.2003) (emphasis added). We are unpersuaded that the word “tack” is ambiguous as used in the will, and a trial court may not rewrite unambiguous terms of a will. See Baker, supra. Clearly, based upon the standard definition of “tack,” a trailer is not considered tack. We therefore conclude that the trial court exceeded its discretion when it classified the four-horse trailer as tack and awarded it to Elizabeth.[3]

C. The Remaining Personal Property

As previously noted, the trial court adopted Exhibit 11 indicating ownership of the personal property owned by Elizabeth, by Billy, and jointly owned by them together. Steven and Cyndi argue that the trial court erroneously awarded Elizabeth all the jointly owned personal property— specifically a tractor and its implements, a 16-foot flatbed trailer, all saddles, a gravity-flow trailer, an oat crimper, and a four-wheeler all-terrain vehicle (“the four-wheeler”). It appears that Steven and Cyndi have misinterpreted the trial court’s judgment regarding most of the jointly owned property. The trial court’s judgment states that
“the personal property purchased by [Billy] and [Elizabeth] during the marriage is deemed marital property and [Elizabeth] ha[d] a half ownership interest in this property at the time of [Billy’s] death. The non-marital property shall be divided according to [Elizabeth’s] Exhibit 11.”
(Emphasis added.) Although most of the disputed items fall under the jointly-owned-property category, some of these items require individual analysis.
*815 1. The Four-Wheeler
At trial, Gerald Trawick, Elizabeth’s brother, testified that he had sold the four-wheeler to Billy and Elizabeth. He further testified that the four-wheeler was bought as a gift for Elizabeth, and, he stated, Elizabeth had signed the check that he received as payment for the four-wheeler. Elizabeth also testified that the four-wheeler was hers and that she had continued to maintain it since Billy’s death. In contrast, Steven testified that the four-wheeler belonged to Billy. It was up to the trial court, as the finder of fact, to determine the ownership of the four-wheeler. Although the trial court’s judgment does not specifically reference the four-wheeler, the four-wheeler was included in the list of Elizabeth’s property in Exhibit 11, which was incorporated into the trial court’s judgment. We affirm that part of the trial court’s judgment insofar as the trial court awarded Elizabeth the four-wheeler by virtue of incorporating Exhibit 11 into its judgment.
2. The Saddles
The trial court’s judgment awarded Elizabeth all “saddles and all items usually described as ‘tack’ by [Billy] and/or the parties. This shall include all items located in the tack room in the barn.” As we have previously noted, we are unpersuaded by the argument that the use of the word “tack” in the will refers to anything other than what is typically defined as “tack.” The will stated that Elizabeth was to have her pick of Billy’s horses “together with the tack for [the] same.” By agreement of the parties, which was incorporated into the trial court’s judgment, Elizabeth chose three horses. The will did not limit Elizabeth’s choice of saddles; therefore, Elizabeth was entitled to choose three saddles and the remaining necessary tack as defined above.
Elizabeth had included in the jointly-owned-property list included in Exhibit 11 “all saddles (bought together),” except for two saddles that she owned before the marriage; however, she only listed one saddle in the list of property owned by her individually. We agree that Elizabeth should be awarded the saddles that she owned before the marriage. We also agree that Elizabeth would have a one-half ownership interest in any saddles bought during the marriage with funds from the joint-checking account. However, we are unable to ascertain from Exhibit 11 how many saddles will remain in Billy’s estate after Elizabeth assumes ownership of the three saddles that she is entitled to choose. We therefore instruct the trial court to determine on remand which saddles were owned by Elizabeth before the marriage and which saddles, if any, remain in Billy’s estate subsequent to the fulfillment of the award of three saddles to Elizabeth.

3.The Tractor and its Implements, the 16-Foot Flatbed Trailer, the Gravity-Flow Trailer, and the Oat Crim-per

The trial court found that these items were purchased during the marriage and were, therefore, marital property. Having reviewed the record on appeal, we find no error in this portion of the trial court’s judgment. Thus, we affirm the portion of the trial court’s judgment awarding Elizabeth a one-half interest in these items.

VII. Family Allowance and Exempt Property

The trial court granted Elizabeth’s claims for a homestead allowance, exempt property, and a family allowance pursuant to §§ 43-8-110 through -112, Ala.Code 1975, respectively, and further stated that “[t]he claims are to be satisfied from re *816 maining personal property in the Estate of Billy Ernest Smith.”
Section 43-8-112, Ala.Code 1975, which establishes the family allowance, provides, in pertinent part, that a surviving spouse and minor children who were dependent upon the deceased “are entitled to a reasonable allowance in money out of the estate for their maintenance during the period of [probate] administration....” Steven and Cyndi argue that the trial court erred by satisfying Elizabeth’s family-allowance claim from Billy’s personal property. Specifically, they argue that the statute limits a family allowance solely to money and prohibits the use of real or personal property to satisfy this claim. Other than the statute itself, Steven and Cyndi have not provided citation to any authority to support their argument.
We agree with Elizabeth that applying the interpretation set forth by Steven and Cyndi could create a situation in which the estate would have to liquidate assets in order to satisfy the family allowance and that such assets would likely be jointly owned by the spouse claiming the family allowance. Furthermore, in Browning v. Carpenter, 596 So.2d 906 (Ala.1992), our supreme court affirmed the judgment of a trial court that awarded the surviving spouse the deceased spouse’s interest in real property in order to satisfy the surviving spouse’s homestead allowance and family allowance. Accordingly, we do not find that the trial court erred to reversal insofar as it fulfilled Elizabeth’s family-allowance claim from Billy’s personal property.
Steven and Cyndi also seem to argue that there is no evidence supporting Elizabeth’s award of a family allowance. The Commentary to § 43-8-112 states that, “[i]n determining the amount of the family allowance, account should be taken of both the previous standard of living and the nature of other resources available to the family to meet current living expenses until the estate can be administered and assets distributed” and that “need is relative to the circumstances.... ” The undisputed testimony at trial, including that of Steven, was that Elizabeth depended on Billy for support and did not earn any separate income of her own.
“Under the ore tenus rule, we presume that the trial court’s judgment based on findings of fact is correct, and we will reverse only if it is found to be plainly and palpably wrong, after a consideration of all the evidence and after making all the inferences that can be logically made from the evidence. Adams v. Boan, 559 So.2d 1084 (Ala.1990).”
Browning, 596 So.2d at 908 (affirming the trial court’s award of a family allowance to the surviving spouse).
Lastly, Steven and Cyndi argue that the trial court’s award of exempt property to Elizabeth was also erroneous. Section 43-8-111, Ala.Code 1975, provides, in pertinent part, that “the surviving spouse is entitled to receive, in addition to the homestead allowance, property of a value not exceeding $3,500.00 in excess of any security interests therein in household furniture, automobiles, furnishings, appliances and personal effects.” Steven and Cyndi specifically argue that the trial court failed to ascertain the value of Billy’s remaining personal property that it awarded to Elizabeth,' in part to fulfill her claim for exempt property. We agree that the award of Billy’s remaining personal property to fulfill the homestead allowance, exempt-property award, and family allowance is overly broad. Section 43-8-111 limits the exempt-property award to $3,500, and § 43-8-112 requires a calculation to determine the appropriate family-allowance amount. Thus, we reverse this portion of the trial court’s judgment and instruct the trial court to ascertain on re *817 mand the value of Billy’s remaining personal property. We further instruct the trial court to establish the appropriate, individual amounts that Elizabeth is to receive for the family allowance and exempt property.

VIII. Elizabeth’s Cross-Appeal

Finally, we address Elizabeth’s cross-appeal asserting that the trial court erred by failing to award her a resulting trust in the 55 acres. Resulting trusts are divided mainly into two categories: (1) those arising on a failure of an express trust and (2) those arising as the result of a conveyance of property to one person on a consideration from another, commonly referred to as a purchase-money resulting trust. This case involves the latter — an alleged purchase-money resulting trust.
“As applicable to purchase-money resulting trusts, the law in Alabama states that such a trust arises only where one has purchased property with the funds of another and has taken title in himself. Smith v. Davis, 352 So.2d 451 (Ala.Civ.App.1977). A resulting trust arises where the legal estate is disposed of or acquired, not fraudulently or in the violation of any fiduciary duty, but when the intent appears or is inferred or assumed from the terms of the disposition or from the facts and circumstances that the beneficial interest was not to go with the legal title. Birmingham & Atlantic R.R. v. Louisville & Nashville R.R., 152 Ala. 422, 44 So. 679 (1907). An essential element for a declaration of a resulting trust is the payment by one person and conveyance to another. Lewis v. Mohr, 97 Ala. 366, 11 So. 765 (1892). Another indispensable element of a resulting trust is that the purchase money be furnished at or before the purchase. A resulting trust arises at the time title passes; the basic principle is the investment of one’s funds, which were not intended as a gift, in the purchase of the property and the taking of title to the property in another. See Talley v. Talley, 248 Ala. 84, 26 So.2d 586 (1946).”
McClellan v. Pennington, 895 So.2d 892, 896 (Ala.2004).
“ ‘ “This resulting trust depends for its existence on the actual intent of the creator, expressed in acts other than writing or the spoken word. The conduct of the payor with reference to the price and deed lead the court to infer an intent to have a trust for himself. The theory of enforcement is that of carrying out the intent of the settlor, just as truly as if he had reduced his trust to writing and inserted it in the deed. Resulting trusts are ‘intent enforcing’ just as much as are the usual express trusts. They bear little or no relationship to constructive trusts, which do not arise out of intent but depend for their existence on the wrongful conduct of the defendant which induces a court to adjudge him a trustee.”
“ ‘[George G.] Bogert [and George T. Bogert, The Law of Trusts and Trustees § 454] at 249 [ (rev.2d ed.1991).]’
“Woodard v. Funderburk, 846 So.2d [363,] 368 [ (Ala.Civ.App.2002) ].”
Smith v. Smith, 6 So.3d 534, 540-41 (Ala.Civ.App.2008).
It is undisputed that Elizabeth’s name does not appear on the deed or on the mortgage documents to the 55 acres. Further, there was testimony at trial tending to show that Billy had not intended for Elizabeth to receive an interest in the 55 acres. In Mayo v. Gortney, 468 So.2d 147, 148 (Ala.1985), a daughter and mother opened a joint-checking account into which the daughter deposited funds she had received from the proceeds from two life-insurance policies. The mother, on her own accord, used the money from the joint *818 account to purchase real property. Id. The mother then informed the daughter of her intention to sell the property but to not share the profits with the daughter. Id. at 149. Our supreme court held that, because the consideration for the property came from the daughter, it was proper to impose a resulting trust on the property in favor of the daughter. Id. at 150-51. We find it important to note that the Mayo court’s decision appeared to rely on the fact the consideration for the property was traced back to the daughter’s individual funds, not because the daughter and the mother shared a joint-checking account. Id. We, therefore, cannot conclude that the trial court erred to reversal by denying Elizabeth’s claim for a resulting trust in the 55 acres.

IX. Conclusion

Based upon the foregoing, we affirm the trial court’s judgment insofar as it established the boundaries of the one acre to include the barn, awarded Elizabeth the Dodge truck in satisfaction of the devise of “our family car,” awarded Elizabeth a one-half interest in the jointly owned marital property, and denied Elizabeth’s claim for a resulting trust in the 55 acres. We reverse the judgment of the trial court insofar as it awarded Elizabeth the horse pens and the four-horse trailer. We further reverse the trial court’s award of “saddles and items usually described as tack” and remand the cause for the trial court to determine which saddles, and other items reasonably considered to be tack, remain in the estate after Elizabeth chooses the saddles and tack to which she is entitled pursuant to the agreement of the parties. We further revei'se the trial court’s award of Billy’s remaining personal property to satisfy Elizabeth’s claims for family allowance and exempt property and remand the cause for the trial court to determine the value of Billy’s personal property and to establish the specific amount that Elizabeth is to receive for the family allowance and exempt property.
APPEAL — AFFIRMED IN PART; REVERSED IN PART; AND REMANDED WITH INSTRUCTIONS.
CROSS-APPEAL — AFFIRMED.
THOMPSON, P.J., and PITTMAN, MOORE, and DONALDSON, JJ., concur.

. Steven and Cyndi's postjudgment motion was denied by operation of law on January 23, 2013, pursuant to Rule 59.1, Ala. R. Civ. P.; therefore, their notice of appeal filed on March 4, 2013, was timely.

. The record does not indicate whether the title to the Oldsmobile was in Billy's name only or in both Elizabeth and Billy’s name.

. Although we also determine that the trial court improperly classified the Dodge truck as tack, that does not change our conclusion that Elizabeth was entitled to the Dodge truck in satisfaction of the specific devise of "our family car.”